# EXHIBIT 1

A03 - 1 Dream House In 1  1/29/2009 15:12:59                    [WCCO]ARCHIVE.2008.JUL

| | |
|---|---|
| AMELIA / 2 SHOT | (( AME / 2 SHOT ))<br>THIS SUMMER: TWIN CITIES HOUSES ARE SITTING ON THE MARKET LONGER-- AND GOING FOR LESS THAN THEY USED TO. |
| FRANK / 2 SHOT | (( FRA / 2 SHOT ))<br>THAT'S WHY SELLERS ARE GETTING CREATIVE. TAKE ONE MAN'S CONTEST. |

WCCO0003

A04 - 1 Dream House / ANIM  1/29/2009 15:13:06 ___ [WCCO]ARCHIVE.2008.JUL

TAKE VC___VO/SIL (( FRA / VO ))

HE HOPES TO SELL 250-THOUSAND CHANCES TO WIN THIS DREAM HOME IN MINNEAPOLIS.

AT TWENTY-DOLLARS APIECE: THAT'S A COOL FIVE-MILLION DOLLARS.

THE HOMEOWNER SAYS HE'LL SHARE THAT MONEY WITH THE HOMELESS.

WCCO0004

A05 - 1 Dream House In 2  1/29/2009 15:13:15                    [WCCO]ARCHIVE.2008.JUL
FRANK / CU                                              (( FRA / CU ))
                                                        BUT AS ESME MURPHY EXPLAINS,
                                                        POLICE SAY THE ONLY PLACE THAT MAN
                                                        COULD BE MOVING IS TO JAIL.

WCCO0005

A06 - 1 Dream House Pkg  1/29/2009 15:13:23          [WCCO]ARCHIVE.2008.JUL
----- TYPE TITLE TIMES BELOW -----

PAUL STEPNES..26-31

SGT. PETER RITSCHEL...37-46                (( SOT / PKG BEGINS ))
                                                   A BLOCK FROM LAKE OF THE
ESME MURPHY..100-110                       ISLES THE SIGN BECKONS-- WIN THIS
                                           DREAM HOME VALUED
JILL CLARK...136-149                       (( NAT/SOT BREAK ))
                                           "WE HAD A WRITTEN OFFER FOR 1.8
GREG STRZELECKI...159-209                  MILLION DOLLARS  "
                                           (( TRACK ))
                                                   BUT AT THE TIME PAUL STEPNES
TOTAL=....2:22                             WAS ASKING 2.2 MILLION FOR THE HOME
OC=NOT BY ANYBODY."                        ON IRVING AVE SOUTH. SO HE CAME UP
TAKE VC___SOT/PKG                          WITH THE IDEA FOR THE CONTEST.
TAPE & TIME CODE=                                  TO WIN THE HOME YOU HAVE TO
RUNS=:03                                   GUESS HOW MANY NUTS, SCREWS AND
                                           BOLTS ARE IN THIS JAR.
                                                   THE PRICE TO PLAY? 20 BUCKS.
TAPE & TIME CODE=2:19                      (( SOT STEPNES?? ))
RUNS=:6                                    " THIS IS A GAME A CONTEST OF SKILL
*CG 2TITLE                                 ITS A MATHEMATICAL AND ANALYTICAL
PAUL STEPNES                               SKILL CONTEST "
<DREAM HOUSE> OWNER                        (( TRACK ))
                                                   BUT POLICE ARRESTED STEPNES
                                           IN MAY FOR VIOLATING CHARITABLE
                                           GAMBLING LAWS.
TAPE & TIME CODE=17:36                      (( SOT SGT. RITSCHEL))
RUNS=:7                                     " YOU ARE PAYING COMPENSATION FOR
*CG 3TITLE VOICE OF:                        A CHANCE TO WIN A PRIZE OF CASH
SGT. PETER RITSCHEL                         VALUE "
UNDERCOVER OFFICER                          (( SOT ))
TAPE & TIME CODE=17:53                      " FOR A CHANCE TO WIN A 1.8 MILLION
RUNS=:2                                     DOLLAR HOUSE "
                                            (( TRACK ))

                                                   STEPNES' WEB SITE SAYS THE
                                           CONTEST RAISES MONEY FOR THE
                                           HOMELESS AND DESCRIBES THE
                                           CHESTER HOUSE FOUNDATION FOR THE
                                           HOMELESS THAT PAUL STEPNES
                                           FOUNDED.
TAPE & TIME CODE=24:08                      (( STANDUP ))
RUNS=:                                      "BUT WE CHECKED WITH THE
*CG MURPHY                                  SECRETARY OF STATE'S OFFICE. THE
                                           CHESTER HOUSE FOUNDATION IS NOT A

A06 - 2 Dream House Pkg  1/29/2009 15:13:23                    [WCCO]ARCHIVE.2008.JUL

REGISTERED CHARITY IN THE STATE OF MINNESOTA. AND THERE ARE OTHER THINGS WE FOUND WHEN WE DUG A LITTLE DEEPER-- A PAPER TRAIL LINKED TO 28-57 IRVING AVENUE SOUTH."
(( TRACK ))
        FIRST: WE FOUND THREE LIENS FOR MORE THAN 160-THOUSAND DOLLARS AGAINST THE HOUSE.
        WE ALSO FOUND THIS DOCUMENT SHOWING THE HOME WENT INTO FORECLOSURE.
        STEPNES ADMITS HE COULD LOSE THE HOUSE TO FORECLOSURE IN SEPTEMBER TWO MONTHS BEFORE THE ADVERTISED NOVEMBER GIVEAWAY. STEPNES ATTORNEY JILL CLARK

| | |
|---|---|
| TAPE & TIME CODE=10:30<br>RUNS=:15<br>*CG 2TITLE<br>JILL CLARK<br>ATTORNEY | (( SOT ))<br>" HOW CAN YOU GIVE IT AWAY IN NOVEMBER IF YOU LOSE POSSESSION IN SEPTEMBER ? FIRST OF ALL THE CONTEST MAY HAVE MADE ENOUGH MONEY BY THE REDEMPTION DATE TO REDEEM IF NOT THERE IS A BENEFACTOR WHO WILL STEP FORWARD"<br>(( TRACK ))<br>  GREG STRZELECKI PAYED TWENTY DOLLARS TO ENTER |
| TAPE & TIME CODE=1:36 CARLY TAPE<br>RUNS=:04 | (( NAT/SOT BREAK  GREG STRZELECKI))<br>" HERE IS THE FORECLOSURE NOTICE - OH WOW"<br>(( TRACK ))<br>        HE SAYS NO ONE MENTIONED THAT WHEN HE PAID TO ENTER THE CONTEST. |
| TAPE & TIME CODE=3:47<br>RUNS=:4<br>*CG 2TITLE<br>GREG STRZELECKI<br>CONTESTANT | (( SOT STRZELECKI ))<br>"THEY ALL SAID THE SAME THING THAT ALL THE PROCEEDS FROM THE TWENTY DOLLARS WAS ALL GOING TO CHARITY "<br>(( TRACK ))<br>FOR A WHILE STEPNES WAS ALSO HOLDING WEEKLY DRAWINGS<br>        THIS PRINTOUT FROM THE CONTEST'S WEB SITE SAYS GREG WON A 300-DOLLAR MICROWAVE HE'S NEVER SEEN. |

WCCO0007

A06 - 3 Dream House Pkg  1/29/2009 15:13:23                    [WCCO]ARCHIVE.2008.JUL
TAPE & TIME CODE=:47                    (( SOT ))
RUNS=:05                               "WERE YOU EVER NOTIFIED THAT YOU
                                       HAD WON THE MICROWAVE? NO NOT AT
                                       ALL NOT BY ANYBODY."

WCCO0008

A07 - 1 Dream House Tag  1/29/2009 15:13:34                    [WCCO]ARCHIVE.2008.JUL
FRANK / CU                                        (( FRA / CU ))

       STEPNES SAYS HE NEVER CALLED GREG TO LET HIM KNOW HE WON THE MICROWAVE BECAUSE OF HIS ARREST.

       HE WAS RELEASED WITHIN A FEW HOURS.

       HIS ATTORNEY SAYS THE ARREST WAS AN ABUSE OF POLICE POWER AND SHE POINTS OUT STEPNES HAS NOT BEEN CHARGED WITH ANY CRIME.

       THE MINNEAPOLIS CITY ATTORNEY'S OFFICE IS INVESTIGATING THE SITUATION BUT ISN'T COMMENTING.

# EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Paul C. Stepnes, Pete Girard, Jan Girard,
David B. Holland, Terry Yzaguirre,
Ray Neset, Bennett Ross Taylor, Jr., and
Judith Wallen Taylor,

              Plaintiffs,

v.

Peter Ritschel (individual capacity),
Jane Moore (individual capacity),
City of Minneapolis, CBS Broadcasting,
Inc., foreign corporation, and Esme Murphy
(individual),

              Defendants.

Case No. 0:08-cv-5296 ADM/JJK

**CBS DEFENDANTS' FIRST
SET OF INTERROGATORIES TO
PLAINTIFF PAUL C. STEPNES**

Defendants CBS Broadcasting Inc. and Esme Murphy (together, the "CBS

Defendants"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 33,

hereby request that Plaintiff Paul C. Stepnes serve upon defendants' counsel answers, in

writing and under oath, to the following interrogatories within thirty (30) days after

service hereof.

### Instructions and Definitions

    1.    "You" and "your" mean the plaintiff Paul C. Stepnes and any agents,

attorneys, representatives, employees, predecessors, successors and assigns, including

by way of example and not limitation any individual or law firm representing plaintiff

in this litigation, or other persons or entities acting for or on behalf of the plaintiff or in

concert with the plaintiff.  When documents or things are requested, such request includes materials in the possession, custody or control of all such persons or entities.

2.      "This action" and "this litigation" mean the action captioned on the first page of these requests for production.

3.      "Complaint" means the First Amended Complaint filed in this action.

4.      "Irving House" means the house at 2857 Irving Avenue South in Minneapolis, as referred to in the Complaint.

5.      "Project" means the two contests related to the Irving House, as described by the Complaint.

6.      "CBS" means Defendant CBS Broadcasting Inc. and its agents and employees, including Defendant Esme Murphy.

7.      "Challenged Report" means the news report referenced in paragraphs 97-109 of the Complaint, which was broadcast by CBS station WCCO-TV on July 15, 2008.

8.      The term "Communication" shall mean any oral or written statement transmitted by one person to another, including documents and electronic records, other than a communication protected by the attorney-client privilege.

9.      The "Relevant Time Period" shall mean January 1, 2004 through the present, unless otherwise stated.

10.     The words "and" and "or" also have the meaning "and/or."

11.     The term "person" means all individuals and entities.

2

12.   Throughout these requests, the singular shall include the plural and the plural shall include the singular.

13.   The following terms should be read as if they were synonymous, and each should be taken to include the meaning of all of the others:  related to, related in any manner to, concerning, referring to, alluding to, responding to, connected with, with respect to, commenting on, about, regarding, announcing, explaining, discussing, showing, describing, studying, reflecting, analyzing or constituting.

14.   When you are asked to "identify" or "state the identity of" an entity other than a natural person, state its full name and present or last known address and telephone number of its headquarters.

15.   If you contend that it would be unreasonably burdensome to obtain and provide all the information called for in response to any interrogatory or subpart, you should:

      (a)   set forth all information that is available without unreasonable burden; and

      (b)   describe with particularity the efforts made to secure any information the provision of which you claim would be an unreasonable burden.

16.   With respect to your responses to the following interrogatories, if any answer to an interrogatory is withheld because of a claim of privilege, please state the basis for your claim of privilege with respect to such information and the specific ground(s) on which the claim of privilege rests.

3

## Interrogatories

**Interrogatory No. 1:**      Identify all persons who are believed or known by you to have information concerning the subject matter of this litigation including, but not limited to, knowledge of any one or more of the allegations of your Complaint, and for each person so identified, state the substance of the person's knowledge and identify all Communications relating thereto.

**Interrogatory No. 2:**      Identify each person or entity that entered Contest #1 related to the Irving House, including the guess and the date of entry by each contestant, and state the total number of entrants for the contest.

**Interrogatory No. 3:**      Identify each person or entity that entered Contest #2 related to the Irving House, including the guess and the date of entry by each contestant, and state the total number of entrants for the contest.

**Interrogatory No. 4:**      Describe the container (by type, by exterior dimensions, by interior dimensions) and identify the actual number of screws, nails, bolts, fasteners, and any and all other items (including their nature and dimensions) within the container used in each contest relating to the Irving House.

**Interrogatory No. 5:**      Identify the "Benefactor" described in paragraph 15 of the Complaint and any and all documents that reflect Communications, agreements, or contracts with this individual or entity.

4

**Interrogatory No. 6:**   Identify any press agents, publicists or public relations or advertising persons who have performed services for you during the Relevant Time Period.

**Interrogatory No. 7:**   Identify each and every instance in which you have issued any press release or press statement during the Relevant Time Period.

**Interrogatory No. 8:**   Identify each and every instance in which you have been mentioned, identified, referred to, or quoted in any book, magazine, newspaper, or television or radio program or on any website, on-line message board, internet site or other electronically published media during the Relevant Time Period.

**Interrogatory No. 9:**   Identify each and every civic, political, charitable, religious, business, cultural, military, police, social, educational, governmental, or professional organization to which you have belonged, contributed, or provided support during the Relevant Time Period.

**Interrogatory No. 10:**   Identify each and every award or citation that you have received from any civic, political, charitable, religious, business, cultural, military, police, social, educational, governmental, or professional organization, whether given to you in recognition of achievement, contribution, honor, or for any other reason during the Relevant Time Period.

**Interrogatory No. 11:**   With respect to the Challenged Report, identify each and every Communication you have had with persons other than your attorney(s)

5

regarding the Challenged Report, including the date of each such Communication, the identity of all persons participating in or exposed in any manner to each such Communication, and any and all documents that reflect each such Communication.

**Interrogatory No. 12:**     Identify all legal actions to which you have been a party, whether criminal or civil in nature, including law suits, arbitrations and administrative proceedings. For each such action, identify the caption or name of the proceeding, the court, arbitrator(s) or administrative agency involved, the identity of all parties to each such suit or proceeding and the names of their counsel, the general nature of the suit or proceeding, including both claims or charges and counterclaims, if any, and the outcome of each, including any sanctions, fees, or costs imposed upon or awarded against you or your attorney.

**Interrogatory No. 13:**     Describe each and every investigation of which you are aware into circumstances involving you or your activities that has been undertaken during the past ten (10) years by any law enforcement authority, governmental or private entity, regardless of whether the investigation is closed or ongoing and whether or not charges were filed. For each such investigation, identify the nature of the activities under review, the dates of the investigation, the entity conducting the investigation, all individuals involved, and all Communications relating thereto.

**Interrogatory No. 14:**     Directing your attention to CBS Defendants' First Set of Requests for Admissions, which are served herewith, if you deny any of the requests

for admissions, then for each such request that you deny, state all facts that support your

denial.

Dated: March 23, 2009           **FAEGRE & BENSON LLP**

John P. Borger, MN #9878
Leita Walker, MN #387095
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
612-766-7000

_____
Michael D. Sullivan, DC #339101
    (*admitted pro hac vice*)
Levine Sullivan Koch & Schulz, LLP
1050 17th Street NW, Suite 800
Washington, DC 20036
(202) 508-1100

**ATTORNEYS FOR DEFENDANTS
CBS BROADCASTING INC. AND
ESME MURPHY**

**Certificate of Service**

I hereby certify that on this the 23rd day of March, 2009, I directed that a true and correct copy of the foregoing **CBS Defendants' First Set of Interrogatories to Plaintiff Paul C. Stepnes** be served upon counsel of record by First-Class mail, postage prepaid, as follows:

Jill Clark, Esq.
JILL CLARK PA
2005 Aquila Av. N.
Golden Valley, MN 55427
763-417-9102
*Attorney for Plaintiffs*

Susan L. Segal, Esq.
Sara J. Lathrop, Esq.
Minneapolis City Attorney's Office
333 South Seventh Street, Suite 300
Minneapolis, MN 55402-2453
(612) 673-2010
*Attorneys for Defendants Ritschel,*
*Moore, and City of Minneapolis*

Michael D. Sullivan

# EXHIBIT 3

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

-----------------------------------------------------

Paul Stepnes, *et al*,

      Plaintiffs,

v.

Peter Ritschel, *et al*,

      Defendants.

Civil Case No. 08-cv-5296 (ADM/JJK)

**PLAINTIFF STEPNES' OBJECTIONS & ANSWERS TO CBS-DEFENDANTS' FIRST SET OF INTERROGATORIES AMENDED AUGUST 16, 2009 (ADDITIONS ARE BOLDED)**

-----------------------------------------------------

TO:    Defendants and their attorneys of record.

Answers or documents identified or produced are made without in any way waiving or intending to waive, but on the contrary, intending to preserve and preserving all the following:

1.    All questions as to competency, relevancy, materiality, privilege, and admissibility of evidence for any purpose in any subsequent proceedings or the trial of this or any other action;

2.    The right to object to the use of these answers, or the subject matter thereof, in any subsequent proceedings or the trial of this or any other action on any grounds.

3.    The right to object on any ground at any time to a demand for further answers to these or any other requests or other discovery proceedings involving or relating to the subject matter of the responses herein; and

4.    The right to supplement and/or amend these answers based upon the recollection of persons or presently unavailable, or the discovery of additional documents or information.

## GENERAL OBJECTIONS

<u>Attorney-Client Privilege and Principle of Attorney Work Product</u>

Some of the documents requested by these requests are protected by the attorney-client privilege and/or the principle of attorney work product. Plaintiff therefore objects to such requests on those grounds. No specific answer of Plaintiffs below constitutes a waiver of this general objection.

<u>Scope</u>

Some of the documents requested by these requests are beyond the scope of this lawsuit because the requests are overly broad, beyond the time-scope of this lawsuit and because they are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff therefore objects to such requests on those grounds. No specific answer of Plaintiff below constitutes a waiver of this general objection.

<u>SUBJECT TO INTERPRETATION:</u>

Plaintiffs' objects because some of these requests are subject to interpretation. Plaintiffs have diligently attempted to fully respond, yet he cannot be precluded from later proffering evidence to the Court, that the Defendants might think answers these interrogatories, but which Plaintiffs do not know have a bearing.

## SPECIFIC OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

A.     Plaintiff objects to the overbreadth of the definition for "you" and "your." The definition is vague, and is difficult to apply (particularly in this case).

B.     Plaintiff objects to the term "Challenged Report" to the extent it is misleading. Stepnes has not stated that he will not challenge other "reports" (website, morning broadcast), and discovery is continuing with regard to those publications.

C.     Plaintiff objects to the "Relevant Time Period," as it states no reason whatsoever to commence it 1/1/04, and indeed, Plaintiff objects that much of that timeframe is irrelevant (and therefore the use of that Term in interrogatories seeks information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence).  **Stepnes did not withhold any documents due to this objection.**

D.     Plaintiff notes that these interrogatories contain numerous subparts.  Plaintiff is answering all of these interrogatories, but he does not waive any right, in the future, either with regard to these interrogatory answers, or with regard to any set propounded in the future, to raise the objection that more than the allowable number of interrogatories have been propounded.

See also specific objections relating to definitions, below.

### OBJECTIONS & ANSWERS TO SPECIFIC INTERROGATORIES

**Interrogatory No. 1:**  Identify all persons who are believed or known by you to have information concerning the subject matter of this litigation including, but not limited to, knowledge of any one or more of the allegations of your Complaint, and for each person so identified, state the substance of the person's knowledge and identify all Communications thereto.

**Objection:**  To the extent that this interrogatory requests communications between Plaintiffs and their attorney(s), Plaintiff objects on the basis of the attorney-client privilege.

**Answer:**  Without waiving the foregoing objection,

| # | Person | Summary of relationship/knowledge as believed by plaintiff[1] |
|---|--------|---------------------------------------------------------------|
| 1 | Paul Stepnes | Plaintiff |
| 2 | Peter Ritschel | Defendant Police Officer |
| 3 | Jane Moore | Defendant Police Officer |
| 4 | Other MPD officers | Involved in search (see City-defendants' document production), or involved but not yet identified re the alleged "investigation" of potential crime by Stepnes |

---

[1]     For parties, see complaint(s).

| 5 | Esme Murphy | Defendant individual |
|---|---|---|
| 6 | WCCO/CBS | Defendant corporation. Individuals who work(ed) for that corporation who were identified by the corporation (see, e.g., CBS' responses to Plaintiffs' first set of discovery), including:<br><br>Kris Berg;<br>Jeannette Trumpeter;<br>Bill Kruskop;<br>Scott Libin;<br>Reed Erickson; and<br>All CBS/WCCO who received requests to preserve evidence (Andy Siegel, Carrie Nolan, other attorneys at CBS legal).<br><br>Others identified by Esme Murphy in her deposition, by any other CBS personnel in their depositions/interrogatory answers, or by any other discovery vehicle. |
| 7 | Pete Girard | Plaintiff |
| 8 | Jan Girard | Plaintiff |
| 9 | Ray Neset | Plaintiff |
| 10 | Terry Yzaguirre | Plaintiff |
| 11 | Bennett Ross Taylor | Plaintiff |
| 12 | Judith Wallen Taylor | Plaintiff |
| 13 | Bob Gustafson | Builder bob |
| 14 | "D.E." | Identified in Ritschel's search warrant application |
| 15 | William Palmer | Information/public relations for MPD (identified by Mprhy in her deposition and in media about the arrest) |
| 16 | Jesse Garcia | Information/public relations for MPD (identified by Mprhy in her deposition) |
| 17 | Paul Simonson | Who was working on corporate work for the Chester House Foundation |
| 18 | All mortgagors and lienholders | See documents from county department. |
| 19 | Legal counsel for State Senate | This name was on a business card seized by Ritschel and never returned to Stepnes |
| 20 | Dake Dorris | Knowledge of contests, police removal of property and chest/nails |
| 21 | Jill Clark | Attorney for Stepnes (whether a "necessary" witness remains to be determined), see complaint, Esme Murphy deposition |
| 22 | Michelle Gross | Present when Ritschel and police were removing property from Irving House allegedly pursuant to search warrant |
| 23 | Darryl Robinson | Present when Ritschel and police were removing property |

|  |  | from Irving House allegedly pursuant to search warrant (see affidavit re pictures filed with state court) |
|---|---|---|
| 24 | Jill Waite | Present when Ritschel and police were removing property from Irving House allegedly pursuant to search warrant |
| 25 | Contestants – potentially | See documents produced |
| 26 | Scott Dibble | See complaint(s) |
| 27 | Tom Barrett | See complaint(s) |
| 28 | Mary Ellen Heng | Charging Attorney at Minneapolis City Attorneys Office |
| 29 | Greg Stzrelicki |  |
| 30 | Representatives at Channel 9 |  |
| 31 | Friend who was court reporter |  |
| 32 | Dylan Thomas | Reporter for Southwest Journal, present when Ritschel/Moore arrested Stepnes

Also photographer from that session, although identity at this time not known |
| 33 | Carol Aberman and Jean Goldman | Initial PR firm hired for Contest.  Present at time of Ritschel/Moore arrest |
| 34 | Mark Bonacorso, MediaInk | Second PR firm retained |
| 35 | Dylan Thomas | Reporter for Southwest Journal, present during arrest of Stepnes by Ritschel/Moore |
| 36 | Investigator Badge #6037 | "authorized PC" |
| 37 | Christopher Mihm | Assisted with website for Contest(s) |
|  | All witnesses identified by any defendant as a witness or potential witness |  |
|  | Foundation witnesses as necessary |  |

**See also amended 26(a)(1) disclosures.**

**Interrogatory No. 2:**    Identify each person or entity that entered Contest #1 related to the Irving House, including the guess and the date of entry of each contestant, and state the total number of entrants for the contest.

**Objection**: Plaintiff Stepnes objects to this interrogatory because it seeks information that, due to police interference, he may not be able to produce (see below), or may not have any retained documents with which to refresh his recollection.

**Answer**: When police arrived at the Irving House on May 29, 2008, they put Stepnes in the back of a squad car amid false or misleading allegations about him. They then had full reign of the house, they seized whatever they wanted, and they did seize entry forms for Contest #1, as well as checks. Police left with literally boxes of documents, identified as "box of documents" (or similar) on the search warrant receipt. Police refused to allow Stepnes or his agent(s) to examine what was being removed from the house (purportedly pursuant to the search warrant, although that is disputed), and compare it to the search warrant. Stepnes objected in court (in various forms) to this overbroad confiscation of property, and he indicated that by the time police prepared a proper inventory (this was over the weekend, *after* Stepnes had filed a motion in court), that Stepnes had no way of proving what police had taken, but never inventoried. Stepnes can identify some of what he knows that police took but did not inventory, and he continues to try to identify additional objects/documents, but at this time Stepnes cannot be sure that the physical contestant forms that he has possession of are indeed all of said documents. See documents produced.

**Interrogatory No. 3**. Identify each person or entity that entered Contest #2 related to the Irving House, including the guess and the date of entry by each contestant, and state the total number of entrants for the contest.

**Answer**: See documents produced. Also note that most of those who had entered Contest #1, when given the choice of either getting their money back, or re-entering (Contest #2), chose to re-enter. Therefore, documents produced in response to Interrogatory No. 2 may be responsive to this interrogatory.

**Interrogatory No. 4**. Describe the container (by type, by exterior dimensions, by interior dimensions) and identify the actual number of screws, nails, bolts, fasteners, and any and all other items (including their nature and dimensions) within the container used in each contest relating to the Irving House.

**Objection**. This interrogatory asks Stepnes to perform work that he did not previously due, in order to draw some type of conclusion for Defendants, almost as if some type of expert. Stepnes objects that such is outside the permissible discovery allowed by Rule 26.

**Answer**: Without waiving the foregoing objection(s), Stepnes indicates that the police seized the chest for Contest #1, before he had counted the fasteners (this word used here to apply to all nails, screws and other fasteners in the chest), removed the fasteners, bumped the chest down the steps (causing nails to drop out), and then returned the fasteners in a separate container. It has been impossible, under the circumstances, to determine how many fasteners were lost as a result of the police conduct. The chest belonged to someone else and had to be returned to her. The foregoing is part of the reason for shutting down Contest #1 and starting Contest #2.

Contest #1 used a wooden bench with a glass top put into it (so that nails, etc. would be visible). Plaintiff is seeking the dimensions.

Contest #2 used an aquarium, and the dimensions were noted on the website.

Stepnes did not then, nor does he now know the total number of nails/fasteners in the two vessels. This was on purpose, so that when people were making their calculated submissions, he would not show any reaction on his face (either positively or negatively). Defendants have now cited any law for the proposition that Stepnes must count them now.

Stepnes is producing, in response to request for documents, physical items that may allow the defendants to count up the nails/fasteners. Stepnes notes that Ritschel's (and

other City employees') interference with Contest #1, including nails falling out when the

chest was moved, will perhaps impair defendants' ability to count the total number.

**Interrogatory No. 5.** Identify the "Benefactor" described in paragraph 15 of the complaint and any and all documents that reflect Communications, agreements, or contracts with this individual or entity.

**Answer.** Bennett Ross Taylor.

**Interrogatory No. 6.** Identify any press agents, publicists or public relations or advertising persons who have performed services for you during the Relevant Time Period.

**Objection.** Plaintiff Stepnes objects to the phase "who have performed services for you" as

vague.

**Answer.** Without waiving the foregoing objection, see answer to Interrogatory No. 1, lines 33

and 34 of the witness chart.

**Interrogatory No. 7.** Identify each and every instance in which you have issued any press release or press statement during the Relevant Time Period.

**Objection.** Plaintiff Stepnes objects to the use of the words "press release" and "press

statement" because they are vague. Also, for purposes of this question, Relevant Time

Period appears either vague or to seek information that is neither relevant nor reasonably

calculated to relate to admissible evidence.

**Answer.** Paul Stepnes does not recall issuing any press releases or press statements, as he

understands those terms.

**Interrogatory No. 8.** Identify each and every instance in which you have been mentioned, identified, referred to, or quotes in any book, magazine, newspaper, or television or radio program or on any website, on-line message board, internet site or other electronically published media during the Relevant Time Period.

**Objection.** This interrogatory seeks information that Paul Stepnes does not possess, or

does not have possession or control over. This interrogatory essentially asks Plaintiff

Stepnes to perform research for the Defendants, and this is outside the scope of Rule 26.

Also, for purposes of this question, Relevant Time Period is overbroad (and unduly burdensome (Stepnes is not required to perform research for Defendants)). Finally, media that covered the filing of the lawsuit (that is, after the July 15, 2008 10 pm broadcast on WCCO television station) is not relevant to the topic of this lawsuit. **These objections were made in good faith, <u>but nothing was withheld due to the objections</u>.**

<u>Answer</u>. Without waiving the foregoing objections, Plaintiff Stepnes is aware of:

- at least 2 articles published by the Southwest Journal regarding the Contest(s)/arrest, etc. (see complaint, documents published);
- 2 articles in the StarTribune re the Contest(s)/arrest, etc.;
- the MinnPost comment "expect a lawsuit" that was attached to the Attorney transmittal affidavit of Jill Clark when moving for relief in state court;
- 1 article (2 parts) in the Mpls Mirror (see documents produced by CBS);
- WCCO broadcast July 15, 2008 10 pm news, and subsequent broadcast(s) (morning show) and website version (see CBS responses and Murphy deposition);
- **Upon information and belief: 2 Better Homes and Gardens issues (as a remodeler) (and see the magazines out on the counter when WCCO took video footage of the Irving House);**
- **Video interview when Stepnes was "neighbor" interviewed about the McMansion located at the corner of Thomas Av. S., and 50th Av. S., Minneapolis (see video produced by CBS-defendants);**
- Discovery is continuing.

<u>Interrogatory No. 9</u>. Identify each and every civic, political, charitable, religious, business, cultural, military, police, social, educational, governmental, or professional organization to

which you have belonged, contributed, or provided support during the Relevant Time Period.

**Objection**. This interrogatory is overbroad, unduly burdensome and vague (in numerous respects, including but not limited to: "political organization" , "business organization" "cultural organization" "social organization" "governmental organization" "belonged" "contributed" and "provided support"). The burdensomeness relates to the vagueries, and also to the fact that he interrogatory seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and the burdensomeness is also created by the overbreadth of the phase "Relevant Time Period." If defendant can be more precise about what it is looking for and why this is the relevant time period, Plaintiff may be able to respond more fully. **The issue is not whether the CBS-defendants can obtain "reputational discovery." The issue is that the interrogatory is vague. Rather than making it more clear, CBS-Defendants have merely demanded that Stepnes answer. Stepnes *has* answered – the best of his ability. He is <u>not</u> required to indicate who he voted for in secret-ballot elections.**

**Answer**. Without waiving the foregoing objections, Paul Stepnes has contributed monies to particular political candidates (but not to a particular political party), and he resided within the boundaries of the City of Minneapolis, a governmental organization.

**Interrogatory No. 10**. Identify each and every award or citation that you have received from any civic, political, charitable, religious, business, cultural, military, police, social, educational, governmental, or professional organization, whether given to you in recognition of achievement, contribution, honor, or for any other reason during the Relevant Time Period.

**Objection**. This interrogatory is overbroad, unduly burdensome and vague (in numerous respects, including but not limited to: "political organization", "business organization" "cultural organization" "social organization" "governmental organization" and "citation").

The burdensomeness relates to the vagueries, and also to the fact that he interrogatory seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and the burdensomeness is also created by the overbreadth of the phase "Relevant Time Period." If defendant can be more precise about what it is looking for and why this is the relevant time period, Plaintiff may be able to respond more fully.

**Amendment**. **Stepnes is not aware of any such documents.**

**Interrogatory No. 11**. With respect to the Challenged Report, identify each and every Communication you have had with persons other than your attorney(s) regarding the Challenged Report, including the date of each such Communication, the identity of all persons participating in or exposed in any manner to each such Communication, and any and all documents that reflect each such Communication.

**Objection**. Stepnes will endeavor to respond to this interrogatory but notes that he did not always keep a record of conversations that he was having, and that he may not be able to recall some conversations (or other particulars relating to same), or may recall some later (after signing these interrogatories). **CBS-defendants have minced words and implied in their objections that Stepnes did not perform any investigation. This is an unfair characterization of this objection. Surely it is difficult for *anyone* to recall each and every conversation – a year later. It is simply not humanly possible. CBS-defendants are free to pursue this line of questioning in a deposition.**

**Answer**. Without waiving the foregoing objection, see response to Interrogatory No. 1. Stepnes is endeavoring to recollect these discussions and to make a list of same. **Please**

see all conversations described in the Complaint in this matter.  It is unclear whether

this includes emails.  If so, see all emails produced that were to or from Mr. Stepnes.

**Interrogatory No. 12.**  Identify all legal actions to which you have been a party, whether criminal or civil in nature, including law suits, arbitrations and administrative proceedings. For each such action, identify the caption or name of the proceeding, the court, arbitrator(s) or administrative agency involved the identity of all parties to each such suit or proceeding and the names of their counsel, the general nature of the suit or proceeding, including both claims or charges and counterclaims, if any, and the outcome of each, including any sanctions, fees, or costs imposed upon or awarded against you or your attorney.

**Objection.**  This interrogatory seeks information neither relevant nor reasonably

calculated to lead to the discovery of admissible evidence.  None of the law suits  below

have any relevance to the proceeding at bar, with perhaps the exception that perhaps Sgt.

Ritschel knew of the lawsuit against Minneapolis Police, and part of his conduct was

retaliatory.  If Ritschel admits that he was aware of the prior lawsuit and/or that his

conduct was at least in part retaliatory, then perhaps some of them might become relevant.

However, at this time, that seems doubtful.  It is clear that no prior arrest/criminal

misdemeanor case would be useful at trial for any purpose (not even impeachment – there

was no conviction), and that the real reason for attempting to obtain this information is to

try to prejudice Plaintiff or his attorney before the Court.  **CBS-defendants' general**

**objection to Interrogatory Answers 8-10 and 12-13** *does not explain* **why this**

**interrogatory is relevant.**

**Interrogatory No. 13.**  Describe each and every investigation of which you aware into circumstances involving you or your activities that has been undertaken during the past ten (10) years by any law enforcement authority, government or private entity, regardless of whether the investigation is closed or ongoing and whether or not charges were filed.  For each such investigation, identify the nature of the activities under review, the dates of the investigation, the entity conducting the investigation, all individuals involved, and all Communications relating thereof.

**Objection**. Like some other interrogatories propounded herewith, this interrogatory asks Stepnes for information that he does not have (and could not get), or asks Stepnes to do research for defendants.   That is outside the scope of Rule 26.   Further, words like "investigation", "circumstances involving you" (this is a good example of the overbreadth of the definition of "you" – surely defendants are not asking for information about whether there have been any investigations of Stepnes' attorney(s)) are vague.   "Law enforcement, government or private entity" is extremely broad, so much so that the question loses meaning (nearly every organization is either public or private).

**Answer**. Stepnes is aware that *following* his filing an action in state court (May 2008), that Sgt. Ritschel pretended that he was investigating possible criminal activity by Stepnes/the Contest. However, Stepnes maintained then, and maintains now, that Ritschel was seeking to try to protect himself from civil lawsuit or disciplinary by the MPD.   It appears that on or about July 1, 2008, Ritschel referred his police report to the Minneapolis City Attorney's Office for possible criminal charges.   Stepnes is aware that in about September 2008, Mary Ellen Heng, Charging Attorney for the Minneapolis City Attorney's Office, reviewed Ritschel's police report and some newspaper articles, and then declined to charge out any criminal case. Stepnes does not view that as an investigation.   Stepnes is not aware of any other "investigation," as he understands the above interrogatory. **Stepnes is not aware of any additional information that would be responsive to this interrogatory.**

**Interrogatory No. 14**. Directing your attention to CBS Defendants' First Set of Requests for Admissions, which are served herewith, if you deny any of the requests for admissions, then for each such request that you deny, state all facts that support your denial.

**Answer**. See Stepnes' responses to Requests for Admissions.

By the plaintiff for the answers:

Signed and sworn before me
This 16th day of August, 2009.

_____
Notary Public

JEFFREY MARC ROTH
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2010

For the objections,

Dated:  August 16, 2009

_____
Paul Stepnes

***

**ATTORNEYS FOR PLAINTIFFS**

_____
By:  Jill Clark, Esq. (#196988)
Jill Clark, P.A.
2005 Aquila Avenue North
Minneapolis, MN 55427
(763) 417-9102 (Telephone)
(763) 417-9112 (Fax)

# EXHIBIT 4

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Paul C. Stepnes, Pete Girard, Jan Girard,
David B. Holland, Terry Yzaguirre,
Ray Neset, Bennett Ross Taylor, Jr., and
Judith Wallen Taylor,

                Plaintiffs,

v.

Peter Ritschel (individual capacity),
Jane Moore (individual capacity),
City of Minneapolis, CBS Broadcasting,
Inc., foreign corporation, and Esme Murphy
(individual),

                Defendants.

Case No. 0:08-cv-5296 ADM/JJK

**CBS DEFENDANTS' FIRST
REQUEST FOR PRODUCTION OF
DOCUMENTS TO PLAINTIFF
PAUL C. STEPNES**

Defendants CBS Broadcasting Inc. and Esme Murphy (together, the "CBS

Defendants"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 34,

hereby request that Plaintiff Paul C. Stepnes produce for inspection and copying the

following documents and things within thirty (30) days after service of this request.

### Instructions and Definitions

1.     "You" and "your" mean the plaintiff Paul C. Stepnes and any agents,

attorneys, representatives, employees, predecessors, successors and assigns, including

by way of example and not limitation any individual or law firm representing plaintiff

in this litigation, or other persons or entities acting for or on behalf of the plaintiff or in

concert with the plaintiff.  When documents or things are requested, such request includes materials in the possession, custody or control of all such persons or entities.

2.     "This action" and "this litigation" mean the action captioned on the first page of these requests for production.

3.     "Complaint" means the First Amended Complaint filed in this action.

4.     "Irving House" means the house at 2857 Irving Avenue South in Minneapolis, as referred to in the Complaint.

5.     "Project" means the two contests related to the Irving House, as described by the Complaint.

6.     "CBS" means Defendant CBS Broadcasting Inc. and its agents and employees, including Defendant Esme Murphy.

7.     "Challenged Report" means the news report referenced in paragraphs 97-109 of the Complaint, which was broadcast by CBS station WCCO-TV on July 15, 2008.

8.     The term "Communication" shall mean any oral or written statement transmitted by one person to another, including documents and electronic records, other than a communication protected by the attorney-client privilege.

9.     The "Relevant Time Period" shall mean January 1, 2004 through the present, unless otherwise stated.

10.     The words "and" and "or" also have the meaning "and/or."

11.     The term "person" means all individuals and entities.

2

12.     As used hereafter, the term "document" means any and every kind of printed, typed, recorded, written, graphic or photographic matter (including audiotape and/or videotape recordings), however printed, produced, reproduced, coded, or stored (including in electronic or digitized form), of any kind or description, whether sent or received or not, including originals, copies, reproductions, facsimiles, and drafts, regardless of their author or origin, however denominated. A draft or non-identical copy is a separate document for purposes of these requests.

13.     "Documents sufficient to show" means that you are to produce documents sufficient to establish the subject of the document request and does not necessarily mean all documents relating to such a request.

14.     "Demand" means any demand, request, command, or petition made by you or by others on your behalf that a message, posting, article, report, story, book or any other type of communication published, broadcast or otherwise disseminated or planned to be published, broadcast or otherwise disseminated in any manner relating to you be retracted, corrected or not published, broadcast or otherwise disseminated.

15.     Throughout these requests, the singular shall include the plural and the plural shall include the singular.

16.     The following terms should be read as if they were synonymous, and each should be taken to include the meaning of all of the others:  related to, related in any manner to, concerning, referring to, alluding to, responding to, connected with, with

3

respect to, commenting on, about, regarding, announcing, explaining, discussing, showing, describing, studying, reflecting, analyzing or constituting.

17.     If you contend that it would be unreasonably burdensome to produce all the documents called for in response to any request, you should:

      (a)     produce all documents that are available without unreasonable burden; and

      (b)     describe with particularity the reasons why production of the remaining documents would be unreasonably burdensome.

18.     In the event that any responsive document cannot be produced in its entirety, you are requested to produce the document to the fullest extent possible, specifying the reasons for your inability to produce the remainder and describing to the fullest extent possible the contents of the portion not produced.

19.     With respect to your responses to the following requests for production, if any document or any portion of any document is withheld because of a claim of privilege, please state the basis for your claim of privilege with respect to such document or portion of any document and the specific ground(s) on which the claim of privilege rests.

20.     In the event that any documents or things that would have been responsive to these requests have been destroyed, discarded or lost, please identify each such document or thing, including:  the nature of the document or thing; the author(s) and addressee(s) of any document; any indicated or blind copies of any document; the document's subject matter, number of pages and attachments or appendices; all persons to

4

whom the document was distributed or persons who have seen the thing; the date of destruction, discard or loss; and, if destroyed or discarded, the reasons therefore and the identity of the person(s) authorizing or carrying out any such destruction or discard.

## Requests for Production

**Request No. 1:**     Any and all documents identified in your responses to CBS Defendants' First Set of Interrogatories to Plaintiff Paul C. Stepnes (the "Interrogatories," served herewith) or consulted by you in connection with the preparation of your responses to the Interrogatories.

**Request No. 2:**     To the extent not produced in response to the foregoing request, any and all documents in any manner related to CBS, including without limitation any Communication with CBS.

**Request No. 3:**     To the extent not produced in response to the foregoing requests, any and all documents in any manner related to the Challenged Report.

**Request No. 4:**     To the extent not produced in response to the foregoing requests, any and all documents that constitute or relate in any manner to any Communication you had with any other person concerning the Challenged Report.

**Request No. 5:**     Any and all documents that relate to mortgages, liens, foreclosure, or other encumbrances on, or interest in, the Irving House.

**Request No. 6:**     Any and all documents that relate to purchase offers for the Irving House, including without limitation the $1.8 million purchase offer referenced in paragraph 12 of the Complaint.

**Request No. 7:**     To the extent not produced in response to the foregoing requests, any and all documents that relate to any promissory note issued to or entered into by Bennett Ross Taylor, Jr. or Judith Wallen Taylor, as referred to in paragraph 133 of the Complaint, that may relate to the Irving House, or any mortgage on or interest in the Irving House, including, without limitation, any and all documents disclosing or relating to:  (a) the date of the promissory note; (b) the amount of the promissory note; (c) the date of the mortgage; (d) the amount of the mortgage; (e) the date of filing of the mortgage with Hennepin County; (f) negotiations or requests regarding the agreement to enter into a promissory note.

**Request No. 8:**     To the extent not produced in response to the foregoing requests, any and all documents that relate to the so-called Benefactor described in paragraph 15 of the Complaint, including without limitation any Communications with the Benefactor or contracts, understandings, or other agreements with the Benefactor, or any and all documents disclosing or relating to:  (a) the date of the communication, contract, understanding, or other agreement; (b) the identity of the Benefactor; (c) any expression of desire of the Benefactor to remain anonymous; (d) any expressed reason of the Benefactor for wishing to remain anonymous; (f) negotiations or requests regarding any contract, understanding, or other agreement with the Benefactor.

**Request No. 9:**     To the extent not produced in response to the foregoing requests, any and all documents that relate to the Foundation that is described in paragraphs 1 and 24 of the Complaint, including without limitation any accounting, tax, organizational documents, or other records relating to the Foundation.

**Request No. 10:**     To the extent not produced in response to the foregoing requests, any and all documents relating to the Project, including without limitations any and all contest rules, entry forms, records of contestant guesses, photographs, account books, promotional materials, and marketing literature.

**Request No. 11:**     To the extent not produced in response to the foregoing requests, any and all documents relating to accounting of entries to contests associated with the Project, including without limitation any documents relating to the return of entry fees to contestants, the number of contestants in each contest, and the identities of contestants for each contest.

**Request No. 12:**     To the extent not produced in response to the foregoing requests, any and all documents that would describe the container (by type, by exterior dimensions, by interior dimensions) or identify the actual number of screws, nails, bolts, fasteners, and any and all other items (including their nature and dimensions) within the container used in each contest relating to the Irving House.

**Request No. 13:**     To the extent not produced in response to the foregoing requests, any and all documents relating to the website www.2857Irving.com.

**Request No. 14:**    To the extent not produced in response to the foregoing requests, any and all email received by or sent from the account 2857Irving@gmail.com.

**Request No. 15:**    To the extent not produced in response to the foregoing requests, any and all documents relating to Minnesota law or practice regarding games of skill and chance, gambling, sweepstakes, and/or contests.

**Request No. 16:**    To the extent not produced in response to the foregoing requests, any and all documents, including without limitation any notes, relating to meetings regarding games of skill and chance, gambling, sweepstakes, contests, the Irving House and/or the Project, with Tom Barrett, Senator Dibble, or staff at the Minnesota State Gambling Board or the Senate Legal Department.

**Request No. 17:**    Any and all documents that constitute or are related in any manner to any articles, reports, or other matter related to you that have been published in any newspaper, magazine, book, or other hard-copy or electronically published publication, including without limitation the magazine publications referenced in paragraph 10 of the Complaint.

**Request No. 18:**    To the extent not produced in response to the foregoing requests, any and all documents that constitute or relate in any manner to any messages, emails or postings concerning you that have been published or disseminated publicly on any website, message board, internet site or other electronically published media during the Relevant Time Period.

8

**Request No. 19:**    All versions of your resume, curriculum vitae and/or any and all biographies or similar documents that set forth your educational and professional credentials, and that were prepared or used by you during the Relevant Time Period.

**Request No. 20:**    Any and all documents related in any manner to your membership in, support of, or involvement with any civic, political, charitable, religious, business, cultural, military, police, social, educational, governmental, or professional organization during the Relevant Time Period.

**Request No. 21:**    Any and all documents and things related to any awards or citations you have ever received from any civic, political, charitable, religious, business, cultural, military, police, social, educational, governmental, or professional organization, whether given to you in recognition of achievement, contribution, honor, or for any other reason.

**Request No. 22:**    Any and all documents related in any manner to any speech, address, interview, oral presentation or other form of participation given by you or on your behalf at any public meeting, forum, debate, or event during the Relevant Time Period.

**Request No. 23:**    To the extent not produced in response to the foregoing requests, any and all documents related to media promotion, contacts, or interviews the subject of which was the Irving House or the Project (including its contests).

9

**Request No. 24:**     To the extent not produced in response to the foregoing requests, any and all documents relating to advertising, marketing, or public relations efforts, expenditures, or campaigns the subject of which was the Irving House or the Project (including its contests), including without limitation those referenced in paragraph 27 of the Complaint.

**Request No. 25:**     To the extent not produced in response to the foregoing requests, any and all documents related in any manner to any dealings or relations between you and any press agents, publicists, or public relations persons, and any expenditures of funds by you on publicity, advertising, or public relations during the Relevant Time Period.

**Request No. 26:**     To the extent not produced in response to the foregoing requests, any and all documents that constitute or are related in any manner to any press release or press statement issued by you or on your behalf during the Relevant Time Period.

**Request No. 27:**     Any and all documents related in any manner to any occasion on which you or your representative has appeared or spoken on television or radio during the Relevant Time Period.

**Request No. 28:**     Any and all documents that constitute or are related in any manner to any news articles, letters to the editor, editorial opinion or commentary that has been published in your name or on your behalf.

**Request No. 29:**     Directing your attention to CBS Defendants' First Set of Requests for Admissions, which are served herewith, if you deny that you are a public figure, then, to the extent not produced in response to the foregoing requests, any and all documents that support your denial.

**Request No. 30:**     Documents, such as a complaint, sufficient to show the nature of any and all civil suits or actions that have been filed against you, or that you have filed against someone else, regardless of the outcome of any such suit or action.

**Request No. 31:**     Documents, such as criminal indictments or informations, sufficient to show the nature of any and all criminal actions that have been filed against you, or criminal charges that have been asserted against you, regardless of the outcome of any such suit, action, or charge.

**Request No. 32:**     Documents relating to any sanctions, fees, or costs imposed upon or awarded against you or your attorney in any prior civil or criminal proceeding.

**Request No. 33:**     Any and all documents related in any manner to any investigation of you or your conduct by any law enforcement agency, regulatory body, or other government entity during the Relevant Time Period, regardless of the outcome of such investigation.

**Request No. 34:**     Any and all documents that constitute or in any manner relate to Demands, including any and all responses to such Demands and any and all other correspondence relating to such Demands.

**Request No. 35:**     Any and all documents that constitute or in any manner relate to any article, report, story, book or any other type of communication that was the subject of a Demand.

**Request No. 36:**     Any and all documents that in any manner relate to civil suits, legal actions, or claims related to any article, report, story, book or any other type of communication that was the subject of a Demand.

**Request No. 37:**     To the extent not produced in response to the foregoing requests, any and all documents that in any manner relate to any civil suit, legal action or claim by you for defamation, libel, slander or damage to reputation.

**Request No. 38:**     Any and all transcripts of deposition testimony or trial testimony given by you in any civil or criminal proceeding, and any and all affidavits, declarations and any other form of statement given by you under oath.

**Request No. 39:**     To the extent not produced in response to the foregoing requests, any and all documents that relate in any manner to any damages or monetary loss you claim to have suffered as the result of the alleged conduct of CBS.

**Request No. 40:**     To the extent not produced in response to the foregoing requests, any and all documents that relate in any manner to any damages or monetary loss you claim to have suffered as the result of the alleged conduct of Peter Ritschel, Jane Moore, or the City of Minneapolis.

**Request No. 41:**     Any and all tax returns filed by you with any local, state, or federal taxing authority during the Relevant Time Period, and all related schedules and attachments.

**Request No. 42:**     Any and all documents concerning your financial condition during the Relevant Time Period, including but not limited to financial statements, financial summaries, financial reports, or statements of financial condition.

**Request No. 43:**     To the extent not produced in response to the foregoing requests, any and all documents generated or received by you that relate in any manner to the conduct of any defendant that you have challenged in your Complaint.

**Request No. 44:**     To the extent not produced in response to the foregoing requests, any and all documents that support, refute, contradict, or otherwise in any manner relate to the allegations in your Complaint.

**Request No. 45:**     Any and all documents that constitute or that relate to any statements of any witnesses regarding the subject matter of this action.

**Request No. 46:**     To the extent not produced in response to the foregoing requests, any and all documents related to any person that you intend to or may call to testify as an expert witness at trial of this matter.  This includes, without limitation, documents relating to the qualifications of such person, documents on which such person will rely to formulate his or her expert opinion, and documents that embody any form of such person's expert opinion.

**Request No. 47:** To the extent not produced in response to the foregoing requests, any and all documents that you intend to or may rely upon during trial of this action, either as evidence or for purposes of impeachment, or for refreshing the recollection of a witness.

**Request No. 48:** Any and all documents reflecting your ownership interest in any entity (including any corporation, association, or other organization, whether for-profit, non-profit, or charitable).

**Request No. 49:** Any and all documents reflecting your position as an officer, director, or managing agent in any entity (including any corporation, association, or other organization, whether for-profit, non-profit, or charitable).

**Request No. 50:** Documents sufficient to show the total cost basis of the Irving House, including the cost of purchasing the property (*e.g.*, the closing documents), the cost of demolition of prior structure(s) and the cost of construction of new or remodeled structure(s) (*e.g.*, contractor invoices, building and material supplier invoices), property taxes paid on the property by you or on your behalf, interest and other loan expenses paid by you or on your behalf, and maintenance expenses.

Dated:  March 23, 2009

**FAEGRE & BENSON LLP**

John P. Borger, MN #9878
Leita Walker, MN #387095
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
612-766-7000

Michael D. Sullivan, DC #339101
   (*admitted pro hac vice*)
Levine Sullivan Koch & Schulz, LLP
1050 17th Street NW, Suite 800
Washington, DC 20036
(202) 508-1100

**ATTORNEYS FOR DEFENDANTS
CBS BROADCASTING INC. AND
ESME MURPHY**

## Certificate of Service

I hereby certify that on this the 23rd day of March, 2009, I directed that a true and correct copy of the foregoing **CBS Defendants' First Request for Production of Documents to Plaintiff Paul C. Stepnes** be served upon counsel of record by First-Class mail, postage prepaid, as follows:

Jill Clark, Esq.
JILL CLARK PA
2005 Aquila Av. N.
Golden Valley, MN 55427
763-417-9102
*Attorney for Plaintiffs*

Susan L. Segal, Esq.
Sara J. Lathrop, Esq.
Minneapolis City Attorney's Office
333 South Seventh Street, Suite 300
Minneapolis, MN 55402-2453
(612) 673-2010
*Attorneys for Defendants Ritschel,
Moore, and City of Minneapolis*


Michael D. Sullivan

# EXHIBIT 5

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---------------------------------------------------------

Paul Stepnes, *et al*,

        Plaintiffs,

v.

Peter Ritschel, *et al*,
        Defendants.

---------------------------------------------------------

Civil Case No. 08-cv-5296 (ADM/JJK)

**PLAINTIFF'S OBJECTIONS AND**
**& RESPONSES TO CBS-DEFENDANTS'**
**FIRST SET OF DOCUMENT**
**REQUESTS TO PAUL STEPNES:**
**AMENDED AUGUST 16, 2009**
**(ADDITIONS ARE BOLDED)**

TO:    Defendants and their attorneys of record.

Answers or documents identified or produced are made without in any way waiving or intending to waive, but on the contrary, intending to preserve and preserving all the following:

1.    All questions as to competency, relevancy, materiality, privilege, and admissibility of evidence for any purpose in any subsequent proceedings or the trial of this or any other action;

2.    The right to object to the use of these answers, or the subject matter thereof, in any subsequent proceedings or the trial of this or any other action on any grounds.

3.    The right to object on any ground at any time to a demand for further answers to these or any other requests or other discovery proceedings involving or relating to the subject matter of the responses herein; and

4.    The right to supplement and/or amend these answers based upon the recollection of persons or presently unavailable, or the discovery of additional documents or information.

## GENERAL OBJECTIONS

<u>Attorney-Client Privilege and Principle of Attorney Work Product</u>

Some of the documents requested by these requests are protected by the attorney-client privilege and/or the principle of attorney work product. Plaintiff therefore objects to such requests on those grounds. No specific answer of Plaintiffs below constitutes a waiver of this general objection.

<u>Scope</u>

Some of the documents requested by these requests are beyond the scope of this lawsuit because the requests are overly broad, beyond the time-scope of this lawsuit and because they are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff therefore objects to such requests on those grounds. No specific answer of Plaintiff below constitutes a waiver of this general objection.

<u>SUBJECT TO INTERPRETATION</u>:

Plaintiffs' objects because some of these requests are subject to interpretation. Plaintiffs have diligently attempted to fully respond, yet he cannot be precluded from later proffering evidence to the Court, that the Defendants might think answers these interrogatories, but which Plaintiffs do not know have a bearing.

## SPECIFIC OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

A.     Plaintiff objects to the overbreadth of the definition for "you" and "your." The definition is vague, and is difficult to apply (particularly in this case).

B.     Plaintiff objects to the term "Challenged Report" to the extent it is misleading. Stepnes has not stated that he will not challenge other "reports" (website, morning broadcast), and discovery is continuing with regard to those publications.

2

C.      Plaintiffs object to the "Relevant Time Period," as it states no reason whatsoever to commence it 1/1/04, and indeed, Plaintiff objects that much of that timeframe is irrelevant (and therefore the use of that Term in interrogatories seeks information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence).

D.      Plaintiffs note that these interrogatories contain numerous subparts.  Plaintiffs are answering all of these interrogatories, but do not waive any right, in the future, either with regard to these document responses, or with regard to any set propounded in the future, to raise the objection that more than the allowable number of interrogatories have been propounded.

See also specific objections relating to definitions, below.

## DOCUMENTS PRODUCED:  SUPPLEMENTATION

Stepnes has produced bate-stamped documents (including paper, pictures and several disks), numbered:  001-694.  Stepnes will continue to supplement as he obtains additional documents.

With regard to contestant sign-up forms, see Stepnes 280-400.

Stepnes *has* conducted an adequate inquiry in responding to requests for documents.  However, Stepnes pointed out *in the Complaint* that the City-defendant failed to create an adequate inventory of items being seized from the Irving House, and it was then and continues to be Stepnes' position that the City did not return all documents that were seized.  Stepnes cannot produce what the City wrongfully seized and has refused to return.

3

## SPECIFIC OBJECTIONS AND ANSWERS TO INTERROGATORIES

**Request No. 1**. Any and all documents identified in your responses to CBS Defendants' First Set of Interrogatories to Plaintiff Paul C. Stepnes (the "Interrogatories" served herewith) or consulted by you in connection with the preparation of your responses to the Interrogatories.

**Response**. See documents produced.

**Request No. 2**. To the extent not produced in response to the foregoing request, any and all documents in any manner related to CBS, including without limitation any Communication with CBS.

**Objection**. "Documents related to CBS" is overbroad, and seeks documents protected by work product and attorney-client privileges.

**Response**. Without waiving the foregoing, see documents produced.

**Request No. 3**. To the extent not produced in response to the foregoing requests, any and all documents in any manner related to the Challenged Report.

**Objection**. This request seeks documents protected by work product and attorney-client

privileges.

**Response**. Without waiving the foregoing, see documents produced.

**Request No. 4**. To the extent not produced in response to the foregoing request, any and all documents that constitute or relate in any manner to any Communications you had with any other person concerning the Challenged Report.

**Objection**. This request seeks documents protected by work product and attorney-client privileges.

**Response**. See documents produced.

**Supplementation:  Plaintiff Stepnes will continue to supplement as he locates**

**additional documents.  Note, for example, the recently-disclosed emails to and from**

**Ali and/or Audie Dunham.   Those were recently located, and Plaintiff wanted the**

**parties to have them before the depositions of the Dunhams, which are coming up**

4

soon. (We will note that CBS produced documents *the night before* depositions

scheduled by Plaintiffs.)

<u>Request No. 5</u>. Any and all documents that relate to mortgages, liens, foreclosure, or other encumbrances on, or interest in, the Irving House.

<u>Objection</u>. This request is overbroad and unduly burdensome. Filed documents are

equally accessible to Defendants, as they are to plaintiff Stepnes.

<u>Response</u>. See documents produced by CBS, and by the City of Minneapolis, and also by

Plaintiffs Taylor.

<u>Supplementation</u>: Stepnes continues his objection, that, as written, this request is

overly broad and burdensome. CBS-defendants have not cited any law that suggests

that Plaintiffs must be able to read their minds, or that if documents are publicly

available, that he must gather them, and provide them to Defendants. CBS-

defendants have alleged that whether Stepnes could lose the house to foreclosure is

false is at the heart of this litigation. The problem with that position is that that

sentence can be proven false with Mr. Stepnes' testimony, and perhaps a few

documents. The irony here is that CBS-defendants are *now* seeking documents to try

to prove that what Esme Murphy stated in the Challenged Report is true. If Murphy

had documentation proving that to be true, at the time, why would CBS-defendants

need, now, to seek that proof from Stepnes?

  This request is burdensome, because if it was taken literally (and it appears

that is how CBS wants is taken), it would mean retrieving documents from public

sources (that CBS-defendants can obtain on their own), and producing

approximately 1,000 pages of documents. As a compromise and attempt to resolve

these issues without Court, Stepnes will produce in the law offices of Jill Clark, P.A.,

several files that contain documents that could be responsive to the above request. (Please call to make an appointment.) However, before Stepnes takes the time and resources required to purchase public documents that are equally available to CBS-defendants, Stepnes asks those defendants to be more specific about what they are looking for.

Request No. 6. Any and all documents that relate to purchase offers for the Irving House, including without limitation the $1.8 million purchase offer referenced in paragraph 12 of the Complaint.

Response. Stepnes never received a physical copy of that document.

Amendment. A number of these offers were verbal, or Stepnes was not provided a copy of the document(s). At this time Stepnes has no additional documents to produce.

Request No. 7. To the extent not produced in response to the foregoing requests, any and all documents that relate to any promissory note issued to or entered into by Bennett Ross Taylor, Jr. or Judith Wallen Taylor, as referred to or in paragraph 133 of the Complaint, that may relate to the Irving House, or any mortgage on or interest in the Irving House, including, without limitation, any and all documents disclosing or relating: (A) the date of the promissory note; (b0 the amount of the promissory note; (c0 the date of the mortgage; (d) the amount of the mortgage; (ee) the date of filing of the mortgage with Hennepin County; (f) negotiations or request regarding the agreement to enter into a promissory note.

Response. See documents produced by Bennett and Judith Taylor.

Request No. 8. To the extent not produced in response to the foregoing requests, any and all documents that relate to the so-called Benefactor described in paragraph 15 of the Complaint, including without limitation any Communications with the Benefactor or contracts, understandings, or other agreements with the Benefactor, or any and all documents disclosing or relating to: (A) the date of the communication, contract,

6

understanding, or other agreement; (b) the identity of the Benefactor; (c) any expression of

desire of the Benefactor to remain anonymous; (d) any expressed reason of the Benefactor

for wishing to remain anonymous; (d) any expressed reason of the Benefactor for wishing

to remain anonymous; (f) negotiations or requests regarding any contract, understanding,

or other agreement with the Benefactor.

**Response**. Stepnes does not recall any such documents at this time.

**Amendment. Stepnes appropriately responded to this request. However, now that**

**CBS defendants have interpreted this request as seeking emails (that was *not* clear**

**from the request), Stepnes is searching to determine if he has possession or control**

**of any such documents that have anything to do with this case). All documents that**

**"relate to" the Benefactor is still objected to as overbroad and unduly burdensome.**

**Stepnes and Taylor have been involved in other projects together, that have nothing**

**to do with this litigation. They are neither relevant nor reasonably calculated to lead**

**to the discovery of admissible evidence. These 2 have been acquainted for some**

**time. Emails inviting one or the other to dinner are not relevant. Further, requiring**

**Stepnes to produce such documents would be an extreme and unnecessary time and**

**monetary cost to him.**

**Request No. 9**. To the extent not produced in response to the foregoing requests, any and
all documents that relate to the Foundation that is described in paragraphs 1 and 24 of the
Complaint, including without limitation any accounting, tax, organizational documents, or
other records relating to the Foundation.

**Response**. Stepnes will ask the professional he assigned to perform these tasks for any

such documents.

**Request No. 10**. To the extent not produced in response to the foregoing requests, any and
all documents relating to the Project, including without limitation any and all contest rules,

entry forms, records of contestant guesses, photographs, account books, promotional materials, and marketing literature.

**Objection**. Stepnes objects on the basis of attorney-client and work product privileges.

**Response**. See all documents produced by Paul Stepnes, by CBS (or its various attorneys) and by the Minneapolis City Attorney Office.

**Amendment**. **Stepnes has produced numerous documents, and CBS-defendants have no legitimate objection to his response to this request. By way of compromise, Stepnes took some pictures of some physical objects that have been at Jill Clark, P.A. for some time (none of the defense counsel have come to view any color documents or things that are at Jill Clark, P.A.). These pictures are being produced. Further, photocopies of the labels are being produced.**

**Request No. 11**. To the extent not produced in response to the foregoing requests, any and all documents relating to accounting of entries to contests associates with the Project, including without limitation any documents relating to the return of entry fees to contestants, the number of contestants in each contest, and the identities of contestants for each contest.

**Objection**. Stepnes objects on the basis of attorney-client and work product privileges.

**Response**. Without waiving foregoing objections, see documents produced.

**Request No. 12**. To the extent not produced in response to the foregoing requests, any and all documents that would describe the container (by type, by exterior dimensions, by interior dimensions) or identify the actual number of screws, nails, bolts, fasteners, and any and all other items (including their nature and dimensions) within the contained used in each contest relating to the Irving House.

**Objection**. Attorney-client privileged documents and work product documents will not be produced pursuant to those privileges.

**Response**. Without waiving the foregoing objections, see documents produced.

**Request No. 13**. To the extent not produced in response to the foregoing requests, any and all documents relating to the website www.2857Irving.com.

8

**Objection**. Attorney-client privileged documents and work product documents will not be produced pursuant to those privileges.

**Response**. See some web shots produced. Others are in the process of being obtained.

**Request No. 14**. To the extent not produced in response to the foregoing requests, any and email received by or sent from the account 2857Irving@gmail.com.

**Response and reservation**. Stepnes is attempting to locate and/or gain access to any such documents. He does **know** that the Minneapolis police seized some computers, and he does not know whether they carefully preserved any emails from this address.

**Amendment**. **Stepnes has not been able to gain possession or control of any such documents at this time.**

**Request No. 15**. To the extent not produced in response to the foregoing requests, any and all documents relating to Minnesota law or practice regarding games of skill and chance, gambling, sweepstakes, and/or contests.

**Objection**. Stepnes objects if this request is seeking law that his current attorney has researched.

**Response**. See documents produced.

Request No. 16. To the extent not produced in response to the foregoing requests, any and all documents, including without limitation any notes, relating to meetings regarding games of skill and chance, gambling, sweepstakes, contests, the Irving House and/or the Project, with Tom Barrett, Senator Dibble, or staff at the Minnesota State Gambling Board or the Senate Legal Department.

**Response**. Police seized documents that they did not return. One of these was a business card from Tom Barrett with notes on it. Another was a business card from the Senate Legal

9

Department attorney. Whether there were other notes, Stepnes cannot say at this time, as police unlawfully seized documents that they did not properly inventory.

**Request No. 17**. Any and all documents that constitute or are related in any manner to any articles, reports, or other matter related to you that have been published in any newspaper, magazine, book, or other hard-copy or electronically published publication, including without limitation the magazine publications referenced in paragraph 10 of the Complaint.

**Response**. See documents produced. See also documents produced by CBS and by the City.

**Request No. 18**. To the extent not produced in response to the foregoing requests, any and all documents that constitute or relate in any manner to any messages, emails or postings concerning you that have been published or disseminated publicly on any website, message board, internet site or other electronically published media during the Relevant Time Period.

**Objection**. This request is vague.

**Response**. Without waiving the foregoing objection, Stepnes does not understand what this is asking for – in addition to newspaper articles produced by all parties in this litigation.

**Supplementation: Stepnes has produced articles about the Contest, his false arrest, etc. (see documents produced). Stepnes does not know what else he can say about how vague this request is. How would Stepnes know if he was discussed on some internet bulletin board? It is Stepnes' position that CBS-defendants are asking him to do their research for them. Stepnes has produced what he is aware of, and/or has possession or control of.**

10

**Request No. 19**. All versions of your resume, curriculum vitae and/or any and all

biographies or similar documents that set forth your educational and professional

credentials, and that were prepared or used by you during the Relevant Time Period.

**Response**. Stepnes has not been able to locate any documents responsive to this request.

**Request No. 20**. Any and all documents related in any manner to your membership in,

support of, or involvement with any civic, political, charitable, religious, business, cultural,

military, police, social, educational, governmental, or professional organization during the

Relevant Time Period.

**Response**. Stepnes has not been able to locate any documents responsive to this request.

**Request No. 21**. Any and all documents and things related to any wards or citations you
have ever received from any civic, political, charitable, religious, business, cultural, military,
police, social, educational, governmental, or professional organization, whether given to
you in recognition of achievement, contribution, honor or for any other reason.

**Amendment. Stepnes is not aware of any such documents.**

**Request No. 22**. Any and all documents related in any manner to any speech, address,
interview, oral presentation or other form of participation given by you or on your behalf at
any public meeting, forum, debate, or event during the Relevant Time Period.

**Objection**. This request is overbroad.  We have a representative form of government, and

Stepnes has had attorneys, so to ask whether any speech was ever made on his 'behalf' is

overbroad.

**Response**. Stepnes is not aware of any documents responsive to this request that are

relevant to this dispute, with the exception, perhaps, of the transcripts of court proceedings

in front of Judge Porter, in which his attorney spoke publicly on his behalf.

**Amendment. This is simply too broad.  Interview?  Every document that relates to**

**any job interview that Stepnes gave?  This is overbroad.  Stepnes cannot recall giving**

11

**any speech, and there is no logical way for him to research the issue, that he is aware**

**of.**

**Request No. 23**.  To the extent not produced in response to the foregoing request, any and all documents related to media promotion, contacts, or interviews the subject of which was the Irving House or the Project (including its contests).

**Objection**.  Plaintiff Stepnes objects on the basis of attorney-client privilege and principle

of work product.

**Response**.  Without waiving the foregoing objections, see documents produced.

**Request No. 24**.  To the extent not produced in response to the foregoing requests, any and all documents relating to advertising, marketing, or public relations efforts, expenditures, or campaigns the subject of which was the Irving House or the Project (including its contests), including without limitation those referenced in paragraph 2 of the Complaint.

**Response**.  See documents produced.

**Request No. 25**.  To the extent not produced in response to the foregoing requests, any and all documents related in any manner to any dealings or relations between you and any pres agents, publicists, or public relations persons, and any expenditures of funds by you on publicity, advertising, or public relations during the Relevant Time Period.

**Objection**.  The "Relevant Time Period" is overly broad.

**Response**.  Without waiving the foregoing objection, see documents produced.

**Request No. 26**.  To the extent not produced in response to the foregoing requests, any and

all documents that constitute or are related in any manner to any press release or press

statement issued by you or on your behalf during the Relevant Time Period.

Response.

**Amendment**. **Stepnes is not aware of any such documents.**

**Request No. 27**.  Any and all documents related in any manner to any occasion on which you or your representative has appeared or spoken on television or radio during the Relevant Time Period.

**Objection**. The definition of "you" was generally objected to, but it also specifically objected to with regard to this request, as Stepnes' attorney might have appeared on television related to some completely different case, but that is not relevant here.

**Response**. See the "package" from July 15, 2008 10 pm news broadcast. Stepnes would produce the video interview by WCCO of Stepnes and his attorney, Jill Clark, filmed July 15, 2008, except that it cannot be produced here, because CBS says it does not have it.

**Amendment**. CBS has now produced a package in which Paul Stepnes was interviewed as a "neighbor" with regard to the McMansion on the corner (Esme Murphy reporting). Stepnes did not recall that interview at the time he first responded to requests for documents in this case. Since CBS already has a copy of this package, Stepnes will not "re"-produce it. Further, Stepnes' position is that this does not make him a public figure, since he is just someone who happened to live in the neighborhood and Murphy knocked on his door and drew him outside. Reference is made here in the spirit of completeness, and listing that package in response to this request does not acquiesce that it makes Stepnes a public figure.

**Request No. 28**. Any and all documents that constitute or are related in any manner to any news articles, letters to the editor, editorial opinion or commentary that has been published in your name or on your behalf.

**Response**. See news articles on the Irving House that have been produced by all parties in this litigation.

**Request No. 29**. Directing your attention to CBS Defendants' first Set of Requests for Admissions, which are served herewith, if you deny that you are a public figure, then, to the extent not produced in response to the foregoing requests, any and all documents that support your denial.

**Objection/response**. Stepnes is not aware of how a document could support that someone is not a public figure. That is like being asked to prove a negative.

13

Request No. 30. Documents, such as a complaint, sufficient to show the nature of any and all civil suits or actions that have been filed against you, or that you have filed against someone else, regardless of the outcome of any such suit or action.

**Objection**. This request seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

**Request No. 31**. Documents, such as a criminal indictment or informations, sufficient to show the nature of any and all criminal actions that have been filed against you, or criminal charges that have been asserted against you, regardless of the outcome of any such suit, action, or charge.

**Objection**. This request seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

**Amendment. Stepnes is not aware of any indictments or informations.**

**Request No. 32**. Documents relating to any sanctions, fees, or costs imposed upon or awarded against you or your attorney in any prior civil or criminal proceedings.

**Objection**. This request seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

**Request No. 33**. Any and all documents related in any manner to any investigation of you or your conduct by any law enforcement agency, regulatory body, or other government entity during the Relevant Time Period, regardless of the outcome of such investigation.

**Objection**. The Relevant Time Period is overbroad.

**Response**. After Stepnes filed an action in state court against Ritschel, City of Minneapolis, then Ritschel pretended to investigate a case against Stepnes, but Stepnes submits that it was an attempt to protect Ritschel. See documents produced by City Defendants.

14

**Request No. 34**. Any and all documents that constitute or in any manner relate to Demands, including any and all responses to such Demands and any and all other correspondence relating to such demands.

**Response**. Stepnes and his attorney asked Murphy to consider additional information, protested certain allegations made by Murphy, or otherwise asked her not to go forward with certain allegations, and the "document" that relates to that is the videotape of the interview of Stepnes and his attorney on July 15, 2008. Stepnes' attorney also demanded a retraction by phone to Nick Posner on or about July 18, 2008, but Stepnes is not aware of any retraction.

**Amendment. Rather than indicating what this request is about, CBS merely said it was "relevant" to reputation. Stepnes cannot tell how or why, so cannot better analyze the claimed deficiency. Interpreting this Request, Stepnes is not aware of any such "Demands" other than the demand for retraction noted above.**

**Request No. 35**. Any and all documents that constitute or in any manner relate to any article, report, story, book or any other type of communication that was the subject of a Demand.

**Response**. See response above.

**Request No. 36**. Any and all documents that in any manner relate to civil suits, legal actions, or claims related to any article, report, story, book or any other type of communication that was the subject of a Demand.

**Response**. See response to 34 and 35.

**Request No. 37**. To the extent not produced in response to the foregoing requests, any and all documents that in any manner relate to any civil suit, legal action or claim by you for defamation libel, slander or damage to reputation.

**Objection**. This request seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

**Amendment. Stepnes is not aware of any such documents.**

15

**Request No. 38**. Any and all transcripts of deposition testimony or trial testimony given by you in any civil or criminal proceeding, and any and all affidavits, declarations and any other form of statement given by you under oath.

**Objection**. This request seeks information that is neither relevant nor reasonably

calculated to lead to the discovery of admissible evidence.

**Amendment. Except for the general notion as to this allegedly requesting**

**"reputation" evidence (which Plaintiffs disagrees with), CBS-defendants have not**

**indicated how this information is relevant.**

**Request No. 39**. To the extent not produced in response to the foregoing requests, any and all documents that relate in any manner to any damages or monetary loss you claim to have suffered as a result of the alleged conduct of CBS.

**Response**. Stepnes is still calculating his damages, and plans to seek expert advice in doing

so.

**Request No. 40**. To the extent not produced in response to the foregoing requests, any and all documents that relate in any manner to any damages or monetary loss you claim to have suffered as the result of the alleged conduct of Peter Ritschel, Jane Moore or the City of Minneapolis.

**Response**. Stepnes is still calculating his damages, and plans to seek expert advice in

doing so.

Request No. 41. Any and all tax returns filed by you with any local, state, or federal taxing authority during the Relevant time Period, and all related schedules and attachments.

**Objection**. This request seeks documents that are not relevant and not calculated to lead

to the discovery of admissible evidence. Further, tax returns carry a heightened protection

of confidentiality, and Defendants have not made the requisite heightened showing to

obtain same.

**Request No. 42**. Any and all documents concerning your financial condition during the Relevant time Period, including but not limited to financial statements, financial summaries, financial reports, or statements of financial condition.

**Objection**. This request seeks documents that are not relevant and not calculated to lead to the discovery of admissible evidence.

**Request No. 43**. To the extent not produced in response to the foregoing requests, any and all documents generated or received by you that relate in any manner to the conduct of any defendants that you have challenged in your Complaint.

**Objection**. Stepnes objects that this request seeks documents protected by the attorney-client privilege or principle of work product.

**Response**. Without waiving the foregoing objections, see the document produced.

**Request No. 44**. To the extent not produced in response to the foregoing request, any and all documents that support, refuse, contradict, or otherwise in any manner relate to the allegations in your Complaint.

**Response**. See documents produced by all parties.  See also depositions in this action.

**Request No. 45**. Any and all documents that constitute or that relate to any statements of any witnesses regarding the subject matter of this action.

**Objection**. To the extent this request seeks attorney-client privilege or work product-protected documents.

**Response**. Without waiving the objection, see document produced.

**Request No. 46.** To the extent not produced in response to the foregoing requests, any and all documents related to any person that you intend to or may call to testify as an expert witness at trial of this matter. This includes, without limitation, documents relating to the qualifications of such person, documents on which such person will rely to formulate his or her expert opinion, and documents that embody any form of such person's expert opinion.

**Response**. Plaintiffs have not yet determined who they will call as expert witnesses in this matter.

**Request No. 47**. To the extent not produced in response to the foregoing requests, any and all documents that you intend to or may rely upon during trial of this action, either for purposes of impeachment, or for refreshing the recollection of a witness.

**Objection**. Plaintiffs object to this document request because it is outside the scope of

permissible discovery. Attorney-client privileged documents and work product documents

will not be produced pursuant to those privileges.

**Request No. 48**. Any and all documents reflecting your ownership interest in any entity
(including any corporation, association, or other organization, whether for-profit, non-
profit, or charitable).

**Objection**. This is overbroad unless is relates to a time period that is actually relevant

(2007-08).

**Response**. Stepnes is working to gain access to responsive documents.

**Amendment. Stepnes is producing additional documents.**

**Request No. 49**. Any and all documents reflecting your position as an officer, director, or
managing agent in any entity (including any corporation, association, or other organization,
whether for-profit, non-profit, or charitable).

**Objection**. This is overbroad unless is relates to a time period that is actually relevant

(2007-08).

**Response**. Stepnes is working to gain access to responsive documents.

**Amendment. Stepnes is producing additional documents.**

**Request No. 50**. Documents sufficient to show the total cost basis of the Irving House,

including the cost of purchasing the property (e.g., the closing documents), the cost of

demolition of prior structure(s) and the cost of construction of new or remodeled

structure(s) (e.g., contractor invoices, building and material supplier invoices), property

taxes paid on the property by you or on your behalf, interest and other loan expenses paid

by you or on your behalf, and maintenance expenses.

**Objection/response**. This is overly broad and unduly burdensome. If Defendant can

explain how the request is relevant, Stepnes will try to collect said documents.

18

Dated:  August 16, 2009

**ATTORNEYS FOR PLAINTIFFS**

By: Jill Clark, Esq. (#196988)
Jill Clark, P.A.
2005 Aquila Avenue North
Minneapolis, MN 55427
(763) 417-9102 (Telephone)
(763) 417-9112 (Fax)

19

# EXHIBIT 6

## Jeanette Bead

**From:** Jill E. Clark [jill@jillclarkpa.com]
**Sent:** Tuesday, April 21, 2009 3:34 PM
**To:** Borger, John P.
**Cc:** Michael Sullivan; Chad Bowman; Walker, Leita; Lathrop, Sara J
**Subject:** RE: Stepnes discovery matters

I certainly have no objection to Michael being in the conversation if he is available.  I thought you told me he was too busy in April.

I will call Borger around 3, and he can 3-way in Michael.

No matter how you try to explain what is occurring, I know what is occurring, and CBS is trying to control what Plaintiffs do and when we do it.  You have conditioned a simple request for an extension of time to respond to discovery, into agreeing to your dates.  Not acceptable.  And not reasonable – to Plaintiffs' point of view.

It's one thing to work cooperatively to set depo dates.  It's another for defendants to set those dates out 3 months.

We'll talk more later.

Tx.


**From:** Borger, John P. [mailto:JBorger@faegre.com]
**Sent:** Tuesday, April 21, 2009 2:30 PM
**To:** Jill E. Clark
**Cc:** Michael Sullivan; Chad Bowman; Walker, Leita; Lathrop, Sara J
**Subject:** RE: Stepnes discovery matters

Jill,

Michael should be part of any phone conference regarding these discovery issues, particularly regarding available dates. We're both generally in our offices this afternoon if you want to talk.  We believe that the positions we have taken are reasonable.

The "way this works" in most litigation, particularly in the early stages of a case, is that deposition dates are set (before or after notice) cooperatively among counsel to minimize schedule conflicts of the attorneys and the witnesses.

We offered to make Kris Berg and Bill Kruskop available in May, based on the reference in your April 15 e-mail to "many witnesses who can appear, other than Murphy," your desire to have some deposition(s) in May, and your March 10 deposition notice for which Berg would be 2) and Kruskop would be 4).

We understand that Sara is available on all of the dates that we suggested except June 17 (with May 22 being better than May 21 for her schedule).  You still have not indicated which of those dates are free for you.

John


This message and any files transmitted with it are confidential and intended to be a privileged communication. It is intended solely for the addressee(s). Access by anyone else is unauthorized. If you are not the intended recipient, any disclosure, copying, distribution, or any action taken or omitted to be taken in reliance on this message, is prohibited and may be unlawful.

If you received this message in error, please notify the sender by e-mail or by telephone and delete it from your system. Thank you for your compliance.

---

**From:** Jill E. Clark [mailto:jill@jillclarkpa.com]
**Sent:** Tuesday, April 21, 2009 1:30 PM
**To:** Lathrop, Sara J; Borger, John P.
**Cc:** Michael Sullivan; Chad Bowman; Walker, Leita
**Subject:** RE: Stepnes discovery matters

There is a lot of disagreement here.  I want first to talk with John, and then let's decide if we need a full phone conference with everyone present.

I was not suggesting that we all talk at 3.

It is clear that CBS is trying to control this litigation, and Plaintiffs will not abide by that.  For example, CBS is now stating that Plaintiffs can have witnesses x and y on May 21.  That is not the way this works.  Plaintiffs issue the deposition notices, and if you want a different date, you clear it with me.

If the CBS position is as stated in the email, I'll go ahead and schedule a phone conference with the Magistrate Judge.

**From:** Lathrop, Sara J [mailto:Sara.Lathrop@ci.minneapolis.mn.us]
**Sent:** Tuesday, April 21, 2009 1:26 PM
**To:** Borger, John P.; Jill E. Clark
**Cc:** Michael Sullivan; Chad Bowman; Walker, Leita
**Subject:** RE: Stepnes discovery matters

I just got in to my office today, and have a meeting now til the end of the day.  If you all still want to talk today I am available for 15 minutes during a break at 3:00.  I will come back to my office at 3pm.

Sara

Sara J. Lathrop
Assistant Minneapolis City Attorney
333 South Seventh Street, Suite 300
Minneapolis, MN 55402
612-673-2072 (direct)
612-673-3362 (fax)
sara.lathrop@ci.minneapolis.mn.us

---

**From:** Borger, John P. [mailto:JBorger@faegre.com]
**Sent:** Tuesday, April 21, 2009 12:00 PM
**To:** Jill E. Clark
**Cc:** Michael Sullivan; Chad Bowman; Lathrop, Sara J; Walker, Leita
**Subject:** Stepnes discovery matters

Jill,

Your various emails since last Wednesday raise a number of points. I'll attempt to address each of them in turn.

1. Defendants CBS and Murphy agree to all but one of your proposed changes to the draft protective order. We do not agree to the proposed change to paragraph 13, which permits the parties indefinitely to retain confidential discovery materials produced in this action. If you are willing to withdraw this proposed change, however, we agree to the remaining changes.

2. We disagree that phased discovery is necessary or appropriate and are not amendable to bifurcating Murphy's deposition. In light of your desire for early deposition discovery, however, we have arranged for photojournalists Kris Berg and Bill Kruskop to be

available on either of the following dates, despite the fact that May is an extraordinarily busy month for WCCO: May 21 or 22. We anticipate that you will need only a half-day at most with each of these witnesses and that both of these depositions will go forward on a single day.

3. The other two witnesses whose testimony you have requested, Murphy and the intern, Reed Erickson, will be available as early as June 3 for depositions. Several weeks ago we proposed alternate dates for such depositions -- June 3, 17, 24, and 30. We still have not heard back from you whether any of those will work for you. Given that the discovery period runs to March 2010, we believe dates that both fall early in the discovery period and accommodate witness schedules are eminently reasonable. Among other things, June depositions give Erickson time to return from Missouri after his college graduation in May. Please note, however, that as a recent college graduate Erickson's time will be very much in flux and we will need to confirm any specific date with him; CBS has no control over his schedule.

4 As stated in the interrogatory responses, CBS confirms that Levine Sullivan Koch & Schulz is representing former employees Erickson and Jeanette Trompeter in any discovery in this action. If you wish to seek formal discovery relating to attorney-client communications, CBS will of course assert an attorney-client privilege.

5. We do not understand why you object to preparing subpoenas for non-party witnesses who are no longer employed by CBS. We have explained that we will accept service of proper subpoenas for witnesses we represent. No subpoena will be necessary for deponents who are current CBS employees.

6. Conditioned upon your reasonable accommodation of WCCO witness schedules, i.e., setting deposition dates as outlined in points 2 and 3 above or at other mutually convenient times, defendants CBS and Murphy are prepared to agree to a 15-day extension for plaintiff Paul Stepnes's discovery responses (to May 12) and a 30-day extension for the discovery responses of all other plaintiffs (to May 27). As such, please let us know your position on those issues so that we can give you a final answer regarding an extension. Any extension would not apply to responses to the requests for admissions, but would apply to responses to the interrogatories related to any denials of any of the requests for admissions.

John

This message and any files transmitted with it are confidential and intended to be a privileged communication. It is intended solely for the addressee(s). Access by anyone else is unauthorized. If you are not the intended recipient, any disclosure, copying, distribution, or any action taken or omitted to be taken in reliance on this message, is prohibited and may be unlawful.

If you received this message in error, please notify the sender by e-mail or by telephone and delete it from your system. Thank you for your compliance.

9/10/2009

# EXHIBIT 7

# LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.

| WASHINGTON, D.C. | NEW YORK | PHILADELPHIA | DENVER |

1050 SEVENTEENTH STREET, N.W.
SUITE 800
WASHINGTON, DC  20036-5514
(202) 508-1100 PHONE
(202) 861-9888 FAX
www.lskslaw.com

WRITERS' DIRECT CONTACT INFORMATION
202-508-1116
msullivan@lskslaw.com
202-508-1134
jbead@lskslaw.com

June 30, 2009

**VIA EMAIL**

Jill Clark, Esq.
JILL CLARK, P.A.
2005 Aquila Avenue North
Minneapolis, MN 55427
jill@jillclarkpa.com

> Re:   *Stepnes v. Ritschel*, No. 08-cv-5296 (D. Minn.) (ADM/JJK)

Dear Ms. Clark:

We write pursuant to Local Rule 37.1 to identify the numerous deficiencies in plaintiffs' responses to the written discovery propounded by defendants CBS Broadcasting Inc. and Esme Murphy (the "CBS Defendants"). We are raising these issues with you in a good faith attempt to resolve our disputes without the need for the Court's intervention.

**Plaintiffs' Responses to Requests for Admissions**

As you know, the many deficiencies in plaintiffs' responses to the requests for admissions were identified in our May 4 letter to you and discussed at length by the parties' counsel during a teleconference on May 15. During the call, counsel for the parties agreed to exchange written correspondence either: (1) identifying the supplemental responses to discovery that would be provided in light of that discussion and/or additional factual investigation by counsel; or (2) confirming that the parties would stand on their objections. We provided our letter to you on May 27. We have not received such a letter from you.

To facilitate the resolution of these outstanding issues, below we identify the requests for admissions for which you indicated a supplemental response would be provided or considered:

# LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.

Jill Clark, Esq.
June 30, 2009
Page 2

Requests for Admissions Directed to Stepnes

- You indicated that you would consult with your client and consider whether to respond fully to Requests for Admissions Nos. 1-6;

- You indicated that you would consult with your client about his responses to Requests for Admission Nos. 9-10, observing that his objection may relate to a still unresolved question concerning whether he initiated contact with the media or the media initiated contact with him; and

- You indicated that you would consult with your client about his responses to Requests for Admission Nos. 16 and 17, agreeing that Mr. Stepnes' objections to the phrase "in conjunction with" were inconsistent with his responses to Requests for Admissions Nos. 18 and 19.

Requests for Admissions Directed to the Remaining Plaintiffs

- You indicated that the contestant plaintiffs would respond to Requests for Admission No. 4;

- You indicated that the contestant plaintiffs would respond to Requests for Admission No. 11, stating that you erroneously concluded that it was identical to Requests for Admission No. 9;

- You indicated that the contestant plaintiffs would consider providing supplemental responses to Requests for Admission Nos. 19-21; and

- You indicated that the contestant plaintiffs would respond to Requests for Admission No. 25, stating that you erroneously concluded that it was identical to Requests for Admission No. 24.

We understand that plaintiffs will stand on their objections to the remaining requests for admissions propounded by the CBS Defendants.

**Initial Disclosures**

Pursuant to Rule 26(a)(1)(A)(i) of the Federal Rules of Civil Procedure, please promptly provide the address and telephone number, if known, for all identified witnesses.

## LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.

Jill Clark, Esq.
June 30, 2009
Page 3

### Plaintiffs' Responses to Interrogatories and Requests for Production of Documents

There are numerous deficiencies in plaintiffs' responses to the interrogatories ("Interrogatories") and requests for production ("RFP") that the CBS Defendants served on March 23, 2009. Please note that, while we are asking that these deficiencies be remedied, the CBS Defendants expressly reserve their right to argue that objections served on June 1, 2009 were untimely absent mutually agreed extensions and should therefore be deemed waived.[1]

Stepnes's Responses to Interrogatories

We urge you to withdraw your blanket objection to a "Relevant Time Period" of five years prior to the alleged defamation, asserted both in response to the Interrogatories and RFP. A defamation action necessarily involves harm to reputation, *see Richie v. Paramount Pictures Corp.*, 544 N.W.2d 21, 28 (Minn. 1996) ("Minnesota law imposes a reputational harm prerequisite in defamation actions"), and Mr. Stepnes has in fact alleged reputational harm, *see* First Amended Complaint ("Compl.") ¶¶ 110-13. As such, the CBS Defendants are clearly entitled to discover evidence relating to Mr. Stepnes's reputation *prior* to the broadcasts, as relevant to the extent of his claimed reputational damages. In addition, because Mr. Stepnes has not admitted that he is a public figure for purposes of this action, the court will be required to resolve that issue based in part on evidence of his access to channels of communication, his participation in public controversies, and his community prominence. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974); *see generally Chafoulias v. Peterson*, 668 N.W.2d 642, 645, 651-54 (Minn. 2003) (discussing public-figure status of "a Rochester businessman and community leader who has achieved success as a local real estate developer"). The CBS Defendants have limited most discovery requests to a period of five years prior to the Challenged Report, which is manifestly reasonable. *See* Fed. R. Civ. P. 26(b)(1) ("[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense"); *Minnesota Specialty Crops, Inc. v. Minnesota Wild Hockey Club, L.P.*, 210 F.R.D. 673, 675 (D. Minn. 2002) ("Generally, discovery may inquire into all information, not otherwise privileged, that is relevant

---

[1] *See* Fed. R. Civ. P. 33(b)(4) ("Any ground not stated in a timely objection [to interrogatories] is waived unless the court, for good cause, excuses the failure."); 8A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2173 ("In the absence of an extension of time, failure to object [to interrogatories] within the time fixed by the rule is a waiver of any objection."); *see, e.g., Henry v. Nat'l Housing P'ship*, No. 1:06CV008-SPM/AK, 2007 WL 2746725, *1 (N.D. Fla. Sept. 18, 2007) (finding it "well settled" that a party's "failure to file timely objections to [another party's] Request for Production of Documents constitutes a waiver of the objections"); *Krewson v. City of Quincy*, 120 F.R.D. 6, 7 (D. Mass. 1988) ("If a party fails to file *timely* objections to document requests, such a failure constitutes a waiver of any objections which a party might have to the requests.") (emphasis in original).

## LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.

Jill Clark, Esq.
June 30, 2009
Page 4

to the subject matter of the action, provided that it is reasonably calculated to lead to the discovery of admissible evidence."). Please promptly supplement your responses to comply with the defined Relevant Time Period.

Mr. Stepnes has failed to respond meaningfully to Interrogatory No. 4 ("Describe the container (by type, by exterior dimensions, by interior dimensions) and identify the actual number of screws, nails, bolts, fasteners, and any and all other items (including their nature and dimensions) within the container used in each contest relating to the Irving House."). He states that "[t]his interrogatory asks Stepnes to perform work that he did not previously [do], in order to draw some type of conclusion for Defendants, almost as if some type of expert." The objection is not well-taken. As the District Court has noted, "parties are under a duty to complete a reasonable investigation when presented with the opposing party's interrogatories and document requests." *3M Innovative Prop. Co. v. Tomar Elecs*, No. 05-756(MJD/AJB), 2006 WL 2670038, at *6 (D. Minn. Sept. 18, 2006). This includes the obligation to describe physical things at issue in the litigation. *E.g.*, *United States v. Magnesium Corp*, No. 2:01-CV-40 BD, 2006 WL 2222358, at *1-2 (D. Utah Aug. 2, 2006) (ordering party to answer interrogatories seeking descriptions of machinery and "'detailed engineering information regarding pieces of equipment'") (citation omitted).

Mr. Stepnes's objections to Interrogatory Nos. 8-10 and 12-13 are improper. Because Mr. Stepnes has placed his reputation at issue by asserting a defamation claim, the CBS Defendants are clearly entitled to take reputational discovery. For example, evidence of a defamation plaintiff's reputation is routinely discovered by examining the nature and outcome of other legal proceedings initiated by and against that plaintiff. *See, e.g., Bularz v. Prudential Ins. Co.*, 93 F.3d 372, 379 (7th Cir. 1996) (evidence of prior fraud action against plaintiff was "relevant to determining whether [plaintiff's] reputation was already compromised at the time that Prudential allegedly defamed him, and thus to the jury's computation of damages"); *Marcone v. Penthouse Int'l Mag. for Men*, 754 F.2d 1072 (3d Cir. 1985) (evidence of prior criminal activity relevant to mitigating damage to reputation for alleged libel relating to statement about specific criminal act). As one court recently noted, "most states permit defendants to present, in mitigation of damages, evidence of the plaintiff's reputation before the alleged defamation." *Knight v. Chicago Tribune Co.*, 895 N.E.2d 1007, 1015 (Ill. Ct. App. 2008), *appeal denied*, 902 N.E.2d 1085 (Ill. 2009). Indeed, this has long been the rule in Minnesota. *Dodge v. Gilman*, 142 N.W. 147, 149 (Minn. 1913) (adopting rule that a "defendant in an action for defamation ... may introduce evidence of the bad reputation of plaintiff on the question of damages"). Moreover, because Mr. Stepnes has failed to admit that he is a limited purpose public figure for purposes of his defamation claim, the CBS defendants are entitled to take discovery relating to this issue – including his access to channels of communication, his participation in public controversies, and his community prominence. *Gertz*, 418 U.S. at 351; *Bagley v. Iowa Beef Processors, Inc.*, 797 F.2d 632, 644-47 (8th Cir. 1986); *see also Chafoulias,*

**LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.**

Jill Clark, Esq.
June 30, 2009
Page 5

668 N.W.2d at 647-48 (noting evidentiary hearing on public figure status). Please promptly supplement these responses.

Finally, we note that, in responses verified on May 31, 2009, Mr. Stepnes states that he "will endeavor to respond" to Interrogatory No. 11, which was served on March 23, 2009. Please be advised that the time to provide meaningful responses to interrogatories is set by the Federal Rules of Civil Procedure. This belated and incomplete response that states only that a plaintiff will provide an answer at some future time, and others like it – *see, e.g.*, Stepnes Response to RFP No. 9 ("Stepnes *will ask* the professional he assigned to perform these tasks for any such documents.") (emphasis added) – is particularly troubling in light of the plaintiffs' consistent demands for *expedited discovery* from the CBS Defendants. Civil discovery is a two-way street. *See generally 3M Innovative Prop. Co.*, 2006 WL 2670038, at *3 ("The United States Supreme Court has long expressed that the liberal discovery rules are meant to ensure open, efficient, and fair dealings within the federal courts."); *Burns v. Hy-Vee, Inc.*, No. Civ. 02-254 (JRTFLN), 2002 WL 31718432, at *2 (D. Minn. Nov. 21, 2002) (discovery rules are "broad ... to allow the parties essentially equal access to the operative facts"). Please promptly supplement the deficient responses.

<u>Stepnes's Responses to RFP</u>

Most broadly, we are concerned that Mr. Stepnes has failed to conduct an adequate investigation to comply with his obligation to produce the requested documents. By way of example, we note that none of the contest entry forms for the party contestants has been produced. Such documents do not appear to be subject to any privilege, and indeed are not included in the plaintiffs' privilege log. In addition, very few e-mail records have been produced. For example, Interrogatory No. 5 asks for the identification of all communications between Mr. Stepnes and Mr. Taylor, but none have been identified. Similarly, although the RFP seek communications regarding the Challenged Report (Request No. 4), relating to purchase offers for the Irving House (No. 6), involving the Benefactor (No. 8), the Foundation (No. 9), sent to or received by the Irving House website (No. 14), or generally regarding contests that spanned months (No. 10), the production remarkably includes only nine emails – mostly from counsel. Indeed, the City of Minneapolis has produced or made available documents responsive to certain of the foregoing requests that should have been produced by Mr. Stepnes in the first instance. And in response to one request for communications (No. 8), the response states that "Stepnes does not *recall* any such documents *at this time*" (emphasis added). Mr. Stepnes is "under a duty to complete a reasonable investigation when presented with the opposing party's interrogatories and document requests." *3M Innovative Prop. Co.*, 2006 WL 2670038, at *6. It is apparent that he has not done so.

## LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.

Jill Clark, Esq.
June 30, 2009
Page 6

Please provide a response to Request Nos. 4, 9, and 21, or, if applicable, list any responsive documents on a privilege log.

Your objection to Request No. 5 – which seeks "documents that relate to mortgages, liens, foreclosure, or other encumbrances on, or interest in, the Irving House" – is not well-taken. In this defamation action, the Amended Complaint alleges that a statement by the CBS Defendants that Stepnes "could lose the house to foreclosure" is false. Compl. ¶ 105. The encumbrances on the house clearly lie at the center of this case, and the plaintiff cannot avoid producing such documents by baldly claiming undue burden. "The party opposing discovery bears the burden of showing that the discovery request is overly broad and burdensome by alleging facts demonstrating the extent and nature of the burden imposed by preparation of a proper response." *Sinco, Inc. v. B & O Mfg., Inc.*, No. 03-5277, 2005 WL 1432202, at *2 (D. Minn. May 23, 2005) (ordering response to requests despite alleged burden of 300 hours to do so). Please supplement the production accordingly.

Please advise how Request No. 18 is vague such that Mr. Stepnes is unable to formulate an answer. The CBS Defendants seek precisely what is asked: "documents that constitute or relate in any manner to any messages, emails or postings concerning you that have been published or disseminated publicly on any website, message board, internet site or other electronically published media during the Relevant Time Period." Such materials are relevant to reputation, damages, and public figure status, and have been clearly defined.

Please supplement the response to Request No. 22. Because both Mr. Stepnes's reputation and his public figure status are issues that will be disputed in this case, all responsive materials are relevant.

Requests Nos. 31-38 and 48-49 are proper, for the reasons outlined above, as they seek evidence of prior reputation and/or evidence relevant to Mr. Stepnes's status as a public figure. *See* Fed. R. Civ. P. 26(b)(1); *see also Minnesota Specialty Crops, Inc.*, 210 F.R.D. at 675; *Walker v. Northwest Airlines Corp.*, No. Civ. 00-2604 MJD/JGL, 2002 WL 32539635, at *1 (D. Minn. Oct. 28, 2002) ("In the context of discovery, 'relevant' has been defined as encompassing 'any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.'") (quoting *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). We urge you to withdraw your objections to these requests.

Request Nos. 41-42 and 50 seek information regarding Mr. Stepnes's finances and the cost of the Irving House. Given that the Amended Complaint alleges that a statement by the CBS Defendants that Stepnes "could lose the house to foreclosure" is false, Compl. ¶ 105, evidence regarding Mr. Stepnes's financial condition and the sunken costs of the Irving House (particularly as compared to its actual market value) are not only relevant to this action, but

**LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.**

Jill Clark, Esq.
June 30, 2009
Page 7

central to the truth or falsity of allegedly defamatory statements.  Moreover, to the extent that
Mr. Stepnes claims financial harm arising from reputational damage, financial records are also
relevant to damages.  *See, e.g., Patton v. S. Bell Tel. & Tel. Co.*, 38 F.R.D. 428, 429-30 (N.D.
Ga. 1965) (compelling discovery of plaintiff's tax returns for ten year period where plaintiff
alleged "'great humiliation and embarrassment'" and injury to reputation allegedly arising from
malicious prosecution) (citation omitted).

    Other Plaintiffs' Responses to RFP

    None of the contestant or benefactor plaintiffs produced communications with
Mr. Stepnes.  Please produce any such documents or, if you claim a privilege, then identify any
such documents on a privilege log.  Also, please confirm that the plaintiffs have conducted a
thorough search for records responsive to the requests.

    Please also supplement plaintiffs' privilege log to include adequate identifying
information, including by way of example the identity of the document's creator.  *See, e.g.,
Glover v. Standard Fed. Bank*, No. Civ. 97-2068DWFSRN, 2001 WL 629631, at *2 (D. Minn.
June 5, 2001) (requiring "the degree of specificity" necessary "to establish a claim of privilege or
work product").  Please also confirm that the log is complete.  Because certain redacted
documents have not been logged, including redactions to the transcript at STEPNES 597-612,
and because privilege objections far outnumber actual logged documents, it is unclear whether
the privilege log accurately reflects the responsive documents that have been withheld or
redacted.

*    *    *

    Please advise which if any of the foregoing responses plaintiffs will supplement and by
when.  We request that you do so in writing no later than July 10, 2009.  We look forward to
hearing from you on these matters.

    Very truly yours,

    LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.

By   _____
    Michael D. Sullivan
    Jeanette Melendez Bead

cc:   Counsel of Record (via email)

# EXHIBIT 8

**Jeanette Bead**

| | |
|---|---|
| **From:** | Jeanette Bead |
| **Sent:** | Monday, July 13, 2009 2:09 PM |
| **To:** | 'Jill E. Clark' |
| **Cc:** | jborger@faegre.com; lwalker@faegre.com; Lathrop, Sara J; Michael Sullivan; Chad Bowman |
| **Subject:** | Stepnes v. Ritschel |
| **Attachments:** | 2009-07-13 Second Interrogatories to Stepnes (00229111).PDF |

Jill,

I write to follow up about outstanding discovery.  As you know, Michael and I wrote to you on June 30 regarding plaintiffs' discovery responses.  We requested that you get back to us regarding our letter by Friday, July 10, but we have not received any correspondence from you indicating which responses would be supplemented.  Please respond to our letter as soon as possible.

In addition, please send us without further delay the additional documents and digital pictures referenced in your July 2 email.

Finally, attached is a second set of interrogatories directed to Paul Stepnes.

Thank you.

Jeanette

Jeanette Melendez Bead
Levine Sullivan Koch & Schulz, L.L.P.
1050 Seventeenth Street, N.W.
Suite 800
Washington, D.C. 20036
202-508-1134 (direct dial)
202-861-9888 (facsimile)
www.lskslaw.com

9/10/2009

# EXHIBIT 9

**Jeanette Bead**

| | |
|---|---|
| **From:** | Michael Sullivan |
| **Sent:** | Friday, July 24, 2009 11:49 AM |
| **To:** | 'Jill E. Clark' |
| **Cc:** | jborger@faegre.com; 'Lathrop, Sara J'; lwalker@faegre.com; Jeanette Bead; Chad Bowman |
| **Subject:** | FW: Stepnes v. Ritschel |
| **Attachments:** | 00225892.PDF |

Jill,

We write to follow up on a number of discovery issues that have remained outstanding for many weeks.  As outlined in our June 30 letter, which is attached again for your convenience, we have not yet received supplemental discovery that you agreed to provide during a May 15 telephone conference.  In addition, the initial disclosures and discovery responses served by the plaintiffs contained serious deficiencies, which we identified in the June 30 correspondence in an attempt to resolve those issues informally.

We requested a meet and confer conference to discuss these issues nearly four weeks ago, and reiterated that request on July 13.  However, we have yet to receive any response, either substantive or relating to the scheduling of such a conference.  While we have attempted to extend every reasonable professional courtesy, we feel compelled to move this case forward -- including, if necessary, seeking court intervention to compel the plaintiffs to comply fully with their discovery obligations.  Of course, we would like to be able to avoid that.  Please contact us no later than next Friday, July 31 so that we can discuss whether and when the plaintiffs will supplement the specific identified discovery deficiencies.

Thanks,
Michael


------ Original Message ------

From:  Jeanette Bead
Sent:  Mon 7/13/2009 02:09 PM
Rcvd:  Mon 7/13/2009 02:09 PM
To:  Jill E. Clark (jill@jillclarkpa.com)
CC:  jborger@faegre.com; lwalker@faegre.com; Lathrop, Sara J (Sara.Lathrop@ci.minneapolis.mn.us); Michael
Sullivan (MSullivan049); Chad Bowman (CBowman049)
Subject:  Stepnes v. Ritschel

=====================================================

<< 2009-07-13 Second Interrogatories to Stepnes (00229111).PDF >>

Jill,

I write to follow up about outstanding discovery.  As you know, Michael and I wrote to you on June 30 regarding plaintiffs' discovery responses.  We requested that you get back to us regarding our letter by Friday, July 10, but we have not received any correspondence from you indicating which responses would be supplemented.  Please respond to our letter as soon as possible.

In addition, please send us without further delay the additional documents and digital pictures referenced in your July 2 email.

Finally, attached is a second set of interrogatories directed to Paul Stepnes.

Thank you.

Jeanette

Jeanette Melendez Bead

9/10/2009

Levine Sullivan Koch & Schulz, L.L.P.
1050 Seventeenth Street, N.W.
Suite 800
Washington, D.C. 20036
202-508-1134 (direct dial)
202-861-9888 (facsimile)
www.lskslaw.com

# EXHIBIT 10

**Jeanette Bead**

| | |
|---|---|
| **From:** | Jill E. Clark [jill@jillclarkpa.com] |
| **Sent:** | Friday, July 24, 2009 11:52 AM |
| **To:** | Michael Sullivan |
| **Cc:** | jborger@faegre.com; Lathrop, Sara J; lwalker@faegre.com; Jeanette Bead; Chad Bowman |
| **Subject:** | RE: Stepnes v. Ritschel |

Thanks Michael.  I just got out of a long trial and will be back to you this weekend.

**Jill Clark, Esq.**
**Jill Clark, P.A.**
Telephone: **763/417-9102**
Fax: **763/417-9112**
jill@jillclarkpa.com
*This email may contain confidential or privileged communications. If you are not the proper recipient of this email, please destroy it and let us know that you have done so. If you are a client and want to discuss the risks associated with emails, or if you do not wish to have us communicate via email, please let us know.*

**From:** Michael Sullivan [mailto:MSullivan@lskslaw.com]
**Sent:** Friday, July 24, 2009 10:49 AM
**To:** Jill E. Clark
**Cc:** jborger@faegre.com; 'Lathrop, Sara J'; lwalker@faegre.com; Jeanette Bead; Chad Bowman
**Subject:** FW: Stepnes v. Ritschel

Jill,

We write to follow up on a number of discovery issues that have remained outstanding for many weeks.  As outlined in our June 30 letter, which is attached again for your convenience, we have not yet received supplemental discovery that you agreed to provide during a May 15 telephone conference.  In addition, the initial disclosures and discovery responses served by the plaintiffs contained serious deficiencies, which we identified in the June 30 correspondence in an attempt to resolve those issues informally.

We requested a meet and confer conference to discuss these issues nearly four weeks ago, and reiterated that request on July 13.  However, we have yet to receive any response, either substantive or relating to the scheduling of such a conference.  While we have attempted to extend every reasonable professional courtesy, we feel compelled to move this case forward -- including, if necessary, seeking court intervention to compel the plaintiffs to comply fully with their discovery obligations.  Of course, we would like to be able to avoid that.  Please contact us no later than next Friday, July 31 so that we can discuss whether and when the plaintiffs will supplement the specific identified discovery deficiencies.

Thanks,
Michael


------ Original Message ------

From:  Jeanette Bead
Sent:  Mon 7/13/2009 02:09 PM
Rcvd:  Mon 7/13/2009 02:09 PM
To:  Jill E. Clark (jill@jillclarkpa.com)
CC:  jborger@faegre.com; lwalker@faegre.com; Lathrop, Sara J (Sara.Lathrop@ci.minneapolis.mn.us); Michael
Sullivan (MSullivan049); Chad Bowman (CBowman049)
Subject:  Stepnes v. Ritschel

=====================================

<< 2009-07-13 Second Interrogatories to Stepnes (00229111).PDF >>

Jill,

I write to follow up about outstanding discovery.  As you know, Michael and I wrote to you on June 30 regarding plaintiffs' discovery responses.  We requested that you get back to us regarding our letter by Friday, July 10, but we have not received any correspondence from you indicating which responses would be supplemented.  Please respond to our letter as soon as possible.

In addition, please send us without further delay the additional documents and digital pictures referenced in your July 2 email.

Finally, attached is a second set of interrogatories directed to Paul Stepnes.

Thank you.

Jeanette

Jeanette Melendez Bead
Levine Sullivan Koch & Schulz, L.L.P.
1050 Seventeenth Street, N.W.
Suite 800
Washington, D.C. 20036
202-508-1134 (direct dial)
202-861-9888 (facsimile)
www.lskslaw.com

# EXHIBIT 11

**Jeanette Bead**

| | |
|---|---|
| **From:** | Jill E. Clark [jill@jillclarkpa.com] |
| **Sent:** | Wednesday, August 05, 2009 4:20 PM |
| **To:** | Jeanette Bead; jborger@faegre.com; Michael Sullivan; Chad Bowman; lwalker@faegre.com |
| **Subject:** | Amended Requests for Admissions - Stepnes |

I have prepared amended Request for Admission responses from Paul Stepnes, but they are currently under review by the client. I will email those ASAP.

Further, I am working on responding to the "second" deficiencies letter – received after Paul Stepnes responded to numerous items of discovery.

Jill Clark
Jill Clark, P.A.
(O) 763 417-9102
From home computer

# EXHIBIT 12

**Jeanette Bead**

---

| | |
|---|---|
| **From:** | Jeanette Bead |
| **Sent:** | Friday, August 07, 2009 11:28 AM |
| **To:** | 'Jill E. Clark'; jborger@faegre.com; Michael Sullivan; Chad Bowman; lwalker@faegre.com |
| **Subject:** | RE: Amended Requests for Admissions - Stepnes |

Jill,

We appreciate your current efforts to respond to our supplemental discovery responses. Given plaintiffs' significant delay in responding to the CBS defendants' discovery, however, we must insist on a reasonably prompt date by which plaintiffs will serve supplemental responses and respond to our second deficiencies letter. In addition, we would like to schedule another teleconference within the next two weeks to discuss any disputes that may remain after plaintiffs respond to the letter. Please let us know when we can expect to receive any supplemental responses and when you are available for a final meet and confer. Thank you.

Jeanette

Jeanette Melendez Bead
Levine Sullivan Koch & Schulz, L.L.P.
1050 Seventeenth Street, N.W.
Suite 800
Washington, D.C. 20036
202-508-1134 (direct dial)
202-861-9888 (facsimile)
www.lskslaw.com

---

**From:** Jill E. Clark [mailto:jill@jillclarkpa.com]
**Sent:** Wednesday, August 05, 2009 4:20 PM
**To:** Jeanette Bead; jborger@faegre.com; Michael Sullivan; Chad Bowman; lwalker@faegre.com
**Subject:** Amended Requests for Admissions - Stepnes

I have prepared amended Request for Admission responses from Paul Stepnes, but they are currently under review by the client. I will email those ASAP.

Further, I am working on responding to the "second" deficiencies letter – received after Paul Stepnes responded to numerous items of discovery.

Jill Clark
Jill Clark, P.A.
(O) 763 417-9102
From home computer

# EXHIBIT 13

**Jeanette Bead**

| | |
|---|---|
| **From:** | Jill E. Clark [jill@jillclarkpa.com] |
| **Sent:** | Wednesday, August 12, 2009 6:13 PM |
| **To:** | Michael Sullivan |
| **Cc:** | jborger@faegre.com; Lathrop, Sara J; lwalker@faegre.com; Jeanette Bead; Chad Bowman |
| **Subject:** | RE: Stepnes v. Ritschel |

I am meeting with my client Paul Stepnes, and we will be responding in writing to claimed deficiencies (your June 30, 2009 letter) by tomorrow.

It may well then be that a meet and confer would be in order – if your clients want to continue to press the issues from your June 30 letter.

**Jill Clark, Esq.**
**Jill Clark, P.A.**
Telephone: **763/417-9102**
Fax: **763/417-9112**
jill@jillclarkpa.com
*This email may contain confidential or privileged communications. If you are not the proper recipient of this email, please destroy it and let us know that you have done so. If you are a client and want to discuss the risks associated with emails, or if you do not wish to have us communicate via email, please let us know.*

---

**From:** Michael Sullivan [mailto:MSullivan@lskslaw.com]
**Sent:** Friday, July 24, 2009 10:49 AM
**To:** Jill E. Clark
**Cc:** jborger@faegre.com; 'Lathrop, Sara J'; lwalker@faegre.com; Jeanette Bead; Chad Bowman
**Subject:** FW: Stepnes v. Ritschel

Jill,

We write to follow up on a number of discovery issues that have remained outstanding for many weeks.  As outlined in our June 30 letter, which is attached again for your convenience, we have not yet received supplemental discovery that you agreed to provide during a May 15 telephone conference.  In addition, the initial disclosures and discovery responses served by the plaintiffs contained serious deficiencies, which we identified in the June 30 correspondence in an attempt to resolve those issues informally.

We requested a meet and confer conference to discuss these issues nearly four weeks ago, and reiterated that request on July 13.  However, we have yet to receive any response, either substantive or relating to the scheduling of such a conference.  While we have attempted to extend every reasonable professional courtesy, we feel compelled to move this case forward -- including, if necessary, seeking court intervention to compel the plaintiffs to comply fully with their discovery obligations.  Of course, we would like to be able to avoid that.  Please contact us no later than next Friday, July 31 so that we can discuss whether and when the plaintiffs will supplement the specific identified discovery deficiencies.

Thanks,
Michael

------ Original Message ------

From:  Jeanette Bead
Sent:  Mon 7/13/2009 02:09 PM
Rcvd:  Mon 7/13/2009 02:09 PM
To:  Jill E. Clark (jill@jillclarkpa.com)
CC:  jborger@faegre.com; lwalker@faegre.com; Lathrop, Sara J (Sara.Lathrop@ci.minneapolis.mn.us); Michael Sullivan (MSullivan049); Chad Bowman (CBowman049)

Subject: Stepnes v. Ritschel

========================================================

<< 2009-07-13 Second Interrogatories to Stepnes (00229111).PDF >>

Jill,

I write to follow up about outstanding discovery. As you know, Michael and I wrote to you on June 30 regarding plaintiffs' discovery responses. We requested that you get back to us regarding our letter by Friday, July 10, but we have not received any correspondence from you indicating which responses would be supplemented. Please respond to our letter as soon as possible.

In addition, please send us without further delay the additional documents and digital pictures referenced in your July 2 email.

Finally, attached is a second set of interrogatories directed to Paul Stepnes.

Thank you.

Jeanette

Jeanette Melendez Bead
Levine Sullivan Koch & Schulz, L.L.P.
1050 Seventeenth Street, N.W.
Suite 800
Washington, D.C. 20036
202-508-1134 (direct dial)
202-861-9888 (facsimile)
www.lskslaw.com

# EXHIBIT 14



August 14, 2009

Mr. Michael Sullivan
Levine Sullivan et al
1050 Seventeenth Street, N.W., Suite 800
Washington, DC 20036-5514

Re: Stepnes *et al* v. Ritschel *et al* (08-vb-5296 (ADM/JJK))

Dear CBS counsel:

I am writing in response to your letter dated June 30, 2009, regarding claimed discovery deficiencies. Plaintiffs have already amended their Rule 26(a)(1) Disclosures and have dealt with the RFA issues.

Interrogatories and Documents Requests to Plaintiff Stepnes.

Paul Stepnes has been working to update discovery as a matter of course, supplementing by providing additional documents as they are discovered or located, and working to obtain additional factual information.

The objection to the timeframe was valid. Note that it indicated that CBS had not indicated why such a timeframe was relevant. Now CBS has argued that it is relevant for "reputational" evidence. It may be, but when we reviewed the interrogatory objections and responses, they would not have changed on the basis of the general timeframe objection. Therefore, the issue is moot.

Below, Stepnes specifically responds to the CBS-defendants' requests that additional information/documents be produced.

Stepnes interrogatory answers.

Stepnes is prepared to supplement Interrogatory No. 4. We also have physical objects in my office: boxes or portions of boxes of nails and fasteners. Stepnes will be supplementing his interrogatory answer as well as producing photographs that we just took of the objects, as well as photocopies of all labels. These photographs were taken recently.



Stepnes will not be counting the nails and other fasteners.  He specifically did not want to know the total during the contest, and that knowledge of his should not have to be changed, as demanded by CBS in discovery.  In other words, he should be able to testify at trial that he has never known the exact number of nails/fasteners.

The City was court-ordered to return the nails/fasteners from Contest #1 ina specific way, <u>which it did not do</u>.  That means that the nails/fasteners are in the condition that the City returned them in.  If CBS wants to count them, let us know, and we will arrange the evidence so that that can be done.  You may find this unnecessary once you receive the updated discovery mentioned above.

We are attempting to gain access to the bench used in Contest #1, or at least to have the woman who owns it to measure it.  Again, the City's refusal to return the evidence in the form in which it was seized has caused a problem with regard to the way in which the nails/fasteners were in that bench, but we are, nonetheless, working to obtain the dimensions.  We will also measure the vessel for Contests #2.

We have a few minor supplementations to Interrogatory No. 8.  We fully understand the law of interrogatories, and dispute that the generic law cited by CBS-defendants provides any persuasion that Stepnes must do the work for the Defendants.  He has listed broadcasts/magazines that he is aware of.  He is not required to attempt to locate every single website and/or bulletin board that might have mentioned his name.  CBS-defendants have not provided any case law that supports the position that he must.

With regard to Interrogatory No. 9 – instead of making the request more clear, in its inimitable fashion, CBS has merely demanded that Stepnes respond, and cited law that is just not relevant to the discussion.  CBS cannot require Stepnes to disclose who he voted for in secret-ballot elections.  And Stepnes has not withheld anything due to his timeframe objection.

With regard to Interrogatory 10 – Stepnes still cannot think of any responsive information.

Stepnes is willing to supplement his answer to Interrogatory No. 11, but other than what was noted in the Complaint or produced in emails, he has not yet thought of other conversations.

With regard to Interrogatory No. 12, the objection is continued.  No case has been cited that trying to determine if Stepnes' <u>attorney</u> has ever been sanctioned has anything to do with reputational evidence.  It's pretty clear what is going on here – and CBS is not being

**JILL CLARK, P. A. ATTORNEY AT LAW**

2005 AQUILA AVENUE NO. • GOLDEN VALLEY, MINNESOTA 55427 • PHONE: 763-417-9102 • FAX: 763-417-9112 • EMAIL: JILL@JILLCLARKPA.COM



forthcoming about what it really wants – to try to smear Clark and Stepnes.  I guess that's what people get when they have the courage to sue CBS.  Find me a case that says having been a party in a lawsuit is relevant to public figure statute or reputational evidence, and I'll consider your argument.  But be honest and forthcoming when you do so, about what it is that you are really looking for.

Answer to Interrogatory 13 does not change.

<u>Document requests</u>.

Stepnes has all along supplemented document requests, even without any request from CBS.  We will continue to do so.

The City seized Stepnes' computers, and they did not come back in the same condition.  We even objected that the email accounts could be compromised by the seizure.  Further, contestant information was seized by the City.  It is Stepnes' position that numerous documents that were seized <u>were not returned by the City</u>.  You must consider that when you demand documents from Stepnes.  Sgt. Ritschel had an interest in impairing Stepnes in this action, and he made <u>no inventory</u> when he removed documents from the Irving House.

The City still has checks, and it is Stepnes' position that the City is in contempt due to its failure to follow certain orders of Judge Porter in the state action.

Therefore, we are producing what we can, but we cannot produced what we don't have.

Additional pictures and documents are being bate-stamped for production – hopefully by Monday.

Please do not hesitate to contact me if you have any questions.

Sincerely,

s/jillclark

Jill Clark

JEC/slf
C:      Clients; other opposing counsel (Lathrop; Borger).

**JILL CLARK, P. A. ATTORNEY AT LAW**

2005 AQUILA AVENUE NO. • GOLDEN VALLEY, MINNESOTA 55427 • PHONE: 763-417-9102 • FAX: 763-417-9112 • EMAIL:
JILL@JILLCLARKPA.COM

# EXHIBIT 15

**Jeanette Bead**

| | |
|---|---|
| **From:** | Jill E. Clark [jill@jillclarkpa.com] |
| **Sent:** | Tuesday, September 08, 2009 9:09 PM |
| **To:** | Jeanette Bead |
| **Subject:** | RE: Question - lawsuit information |

OK, thanks for the clarification.

**Jill Clark, Esq.**
**Jill Clark, P.A.**
Telephone: **763/417-9102**
Fax: **763/417-9112**
**jill@jillclarkpa.com**
*This email may contain confidential or privileged communications. If you are not the proper recipient of this email, please destroy it and let us know that you have done so. If you are a client and want to discuss the risks associated with emails, or if you do not wish to have us communicate via email, please let us know.*

**From:** Jeanette Bead [mailto:JBead@lskslaw.com]
**Sent:** Tuesday, September 08, 2009 7:02 PM
**To:** Jill E. Clark
**Subject:** Re: Question - lawsuit information

Jill,

I don't have the request in front of me, but assuming it encompasses information about sanctions against Stepnes's attorney(s), yes, we will agree to drop that part of the request. Also, just so we're on the same page, we are pressing for documents relating to civil and criminal proceedings against Stepnes, not just civil lawsuits.

Thank you.

Jeanette
This message was sent from my BlackBerry handheld device.

**From:** Jill E. Clark
**To:** Jeanette Bead
**Cc:** Borger, John P.
**Sent:** Tue Sep 08 18:13:11 2009
**Subject:** Question - lawsuit information
You say your clients want "reputation" evidence about Stepnes, so why the part that asks for whether his "attorney" was sanctioned? Are you really saying that is relevant to Stepnes' reputation? And if so – why?

Are you willing to drop that part of the request?

Let me know ASAP.

**Jill Clark, Esq.**
**Jill Clark, P.A.**
Telephone: **763/417-9102**
Fax: **763/417-9112**
**jill@jillclarkpa.com**

9/10/2009

This email may contain confidential or privileged communications. If you are not the proper recipient of this email, please destroy it and let us know that you have done so. If you are a client and want to discuss the risks associated with emails, or if you do not wish to have us communicate via email, please let us know.

**Jeanette Bead**

| | |
|---|---|
| **From:** | Jeanette Bead |
| **Sent:** | Wednesday, September 09, 2009 11:44 AM |
| **To:** | 'Jill E. Clark' |
| **Cc:** | 'Borger, John P.'; Michael Sullivan; Chad Bowman; 'Walker, Leita' |
| **Subject:** | Stepnes v. Ritschel, et al. |
| **Attachments:** | WCCO0377-80 (Priv. Log Doc. No. 8) (00239792).PDF; CBS Defendants' Revised Privilege Log dated 9-9-09 (00240352).PDF; WCCO0381-85 (00240355-6).PDF |

Jill,

I write to follow up on a few matters that were raised during yesterday's "meet and confer."

First, you have asked CBS to reconsider its position concerning the applicability of the privilege to the scripts provided to Nick Poser during the prepublication review of the July 15, 2008 broadcast. We continue to believe that communications between an attorney and client in connection with prepublication review are privileged and that the privilege extends to documents and scripts provided to counsel during the review. *See, e.g., Anaya v. CBS Broadcasting Inc.,* 251 F.R.D. 645, 653 (D.N.M. 2007) (declining to compel production of email exchange between attorney and client, including portion of script forwarded to counsel, because communication was made "for the purpose of obtaining and facilitating the provision of legal advice"). Given the foregoing, we will not disclose whether documents other than scripts were provided to Mr. Poser during the prepublication review.

Attached for your information are two emails forwarding the same script that we now believe should be produced to plaintiffs. A revised privilege log is also attached.

To the extent that you intend to move to compel CBS to produce documents relating to the prepublication review, please note that the email exchanges at issue are identified on the privilege log as Document Nos. 20 and 23.

Second, we have reviewed the CBS Defendants' requests for financial information from Mr. Stepnes (Document Request Nos. 41 and 42) in light of your stated objections to them. We think the requests are limited in scope and do not ask for every piece of paper relating to Stepnes's businesses and ventures. Rather, as we discussed, through these requests the CBS Defendants seek a snapshot of Mr. Stepnes' income, assets and liabilities, both for purposes of assessing his alleged damages and to evaluate the substantial truth of an aspect of the broadcast -- *i.e.,* his ability to redeem the foreclosed Irving House. To assist you in assessing what documents fall within the ambit of Document Request No. 42, "financial condition" documents would include, by way of example, documentation showing any ownership interest in real property; any stock, equity, or other interest in a business or corporation; annual reports or statements of any entities in which Mr. Stepnes owns an interest; end-of-year bank statements, investor statements, or any other such summaries or statements of his financial condition during the relevant time period. With regard to the tax returns, I have reviewed the case you cited during the call, *Maddow v. Proctor & Gamble, Inc.,* 107 F.3d 846 (11th Cir. 1997). In *Maddow,* the Eleventh Circuit *affirmed* the compelled disclosure of the plaintiffs' tax returns. The language you pointed to relates only to whether the plaintiffs should have been sanctioned for refusing to disclose the returns where they already had disclosed their W-2s. We do not think *Maddow* advances your position.

I think this covers the matters I was supposed to get back to you about, but if I missed something, please let me know and I will try to respond as quickly as I can. Also, while I was drafting this, I received your email regarding Mr. Stepnes's proposed resolution regarding reputational evidence and want to be sure that I understand what Mr. Stepnes is proposing. The requests at issue are: Interrogatory No. 12 and Document Request Nos. 30, 31 and 38. Please confirm that Mr. Stepnes will agree to respond to these requests in full.

Finally, during yesterday's call, I neglected to follow up with you about Document Request No. 8 (relating to documents concerning the benefactor). We do not agree with Mr. Stepnes's proposed limitation, because, among other things, Mr. Taylor is a plaintiff in this case. Please let us know if Mr. Stepnes intends to stand on his objection.

Thank you.

Jeanette

Jeanette Melendez Bead
Levine Sullivan Koch & Schulz, L.L.P.
1050 Seventeenth Street, N.W.
Suite 800
Washington, D.C. 20036
202-508-1134 (direct dial)

9/10/2009

202-861-9888 (facsimile)
www.lskslaw.com

# EXHIBIT 16

**Jeanette Bead**

| | |
|---|---|
| **From:** | Jill E. Clark [jill@jillclarkpa.com] |
| **Sent:** | Wednesday, September 09, 2009 9:59 AM |
| **To:** | Jeanette Bead; Borger, John P. |
| **Cc:** | Michael Sullivan; Chad Bowman |
| **Subject:** | Discovery resolution |

Ms. Bead:

Plaintiff Paul Stepnes has had the opportunity to consider 1 of the 2 issues that you posed yesterday in the meet and confer.

   1.  <u>Civil and criminal lawsuits/proceedings</u>:

Mr. Stepnes agrees to identify civil and criminal lawsuits/proceedings. We will need 10 days to respond. Please also note that Plaintiffs will be seeking a suspension of this case (no discovery obligations, no obligations to hire experts/serve reports, etc.) while the Magistrate Judge (and/or the Article III Judge as appropriate) considers the motion we are filing on 9/10. I say this now, so that you don't feel duped, if you agree to give us 10 days to respond, and then you learn that we are seeking a suspension of discovery. Plaintiffs have been diligently considering the various forms of relief that are appropriate under the circumstances, and just recently decided to move to suspend discovery. That is why I have not said anything earlier. And I tell you now simply in the context as noted in this paragraph.

As a practical matter, Ms. Bead, I just will not be able to turn my attention to supplemental interrogatories/document requests this week. Although I do not want to hold up the process in any way, I do also note that the issues were not raised (in the form delivered by email just before our phone conference) until quite recently, and there is nothing I can do now to change my week.

   2.  <u>Financial "snapshot."</u>

We await your description of the types of documents that your clients would need, so that we can make the determination whether to go to motion on this issue. The faster you can get me that information, the faster I can get back to you.

As you are aware, my schedule this week is tight. I am in depositions for the large part of today.

Thank you,

**Jill Clark, Esq.**
**Jill Clark, P.A.**
Telephone: **763/417-9102**
Fax: **763/417-9112**
jill@jillclarkpa.com
*This email may contain confidential or privileged communications. If you are not the proper recipient of this email, please destroy it and let us know that you have done so. If you are a client and want to discuss the risks associated with emails, or if you do not wish to have us communicate via email, please let us know.*

9/10/2009

# EXHIBIT 17

**Jeanette Bead**

| | |
|---|---|
| **From:** | Jeanette Bead |
| **Sent:** | Wednesday, September 09, 2009 4:49 PM |
| **To:** | 'Jill E. Clark' |
| **Subject:** | RE: Stepnes v. Ritschel, et al. |

Jill,

I do not recall making any deal with you yesterday.  Rather, I said that I might be able to limit the request in some way and asked whether you would consider a request for some subset of the documents.  After reviewing our requests, however, and as I stated multiple times during the call, I continue to believe that the requests do not seek every "scrap of paper" relating to Mr. Stepnes's financial condition.  This morning, I was attempting to respond to your stated inability to understand what was meant by the term "financial condition" by identifying the kinds of documents that are sought by the requests.

In any event, now that I have had time to digest your email stating, among other things, that plaintiffs will be seeking a suspension of discovery in this case, I am more confused than ever about what you are trying to accomplish here.  On the one hand, you state that Mr. Stepnes will agree to provide certain discovery within ten days, and, on the other hand, state that plaintiffs will be seeking to suspend discovery altogether.  I am hard pressed to understand how the parties can resolve specific discovery disputes if the plaintiffs take the position that discovery should be suspended in its entirety, as any agreement reached under these circumstances would be illusory.  We intend to move forward with our motion to compel.

In the unlikely event that I am misunderstanding this unfortunate turn of events, for your convenience, I am pasting the discovery requests relating to reputational evidence for which we are seeking a resolution:

**Interrogatory No. 12:**  Identify all legal actions to which you have been a party, whether criminal or civil in nature, including lawsuits, arbitrations and administrative proceedings.  For each such action, identify the caption or name of the proceeding, the court, arbitrator(s) or administrative agency involved, the identity of all parties to each such suit or proceeding and the names of their counsel, the general nature of the suit or proceeding, including both claims or charges and counterclaims, if any, and the outcome of each, including any sanctions, fees, or costs imposed upon or awarded against you or your attorney.

**Document Request No. 30**: Documents, such as a complaint, sufficient to show the nature of any and all civil suits or actions that have been filed against you, or that you have filed against someone else, regardless of the outcome of any such suit or action.

**Document Request No. 31**: Documents, such as criminal indictments or informations, sufficient to show the nature of any and all criminal actions that have been filed against you, or criminal charges that have been asserted against you, regardless of the outcome of any such suit, action, or charge.

**Document Request No. 38**: Any and all transcripts of deposition testimony or trial testimony given by you in any civil or criminal proceeding, and any and all affidavits, declarations and any other form of statement given by you under oath.

If Mr. Stepnes agrees to supplement his interrogatory responses and serve all documents responsive to the foregoing requests within fifteen days from today's date, we will not move forward on this aspect of our motion.

Thank you.

Jeanette Melendez Bead
Levine Sullivan Koch & Schulz, L.L.P.
1050 Seventeenth Street, N.W.
Suite 800
Washington, D.C. 20036
202-508-1134 (direct dial)
202-861-9888 (facsimile)
www.lskslaw.com

---

**From:** Jill E. Clark [mailto:jill@jillclarkpa.com]
**Sent:** Wednesday, September 09, 2009 12:14 PM
**To:** Jeanette Bead

9/10/2009

**Subject:** RE: Stepnes v. Ritschel, et al.

I am about to leave for a full day of depositions (on into the evening).

1. You were going to get to me a limited number of documents on the "financial condition" issue. Your stating "include" was not the deal you made with me yesterday. If you do not have discretion to make deals with me in these sessions, then I want to talk to the decision makers.
2. I do not have time to review the interrogatory/doc request numbers as I am out the door.
3. I do not agree to your raising another issue now – too late for the meet and confer. That will have to wait for another motion. You are depriving my clients of the opportunity to address these issues in a meet and confer, with your lack of planning. I have been very patient, but there is a limit. I also have motion to file tomorrow, and with due respect, I simply do not have the opportunity to consider additional issues just being raised now (particularly since I am out of the office – scheduled until after 10 pm).

**Jill Clark, Esq.**
**Jill Clark, P.A.**
Telephone: **763/417-9102**
Fax: **763/417-9112**
jill@jillclarkpa.com
*This email may contain confidential or privileged communications. If you are not the proper recipient of this email, please destroy it and let us know that you have done so. If you are a client and want to discuss the risks associated with emails, or if you do not wish to have us communicate via email, please let us know.*

**From:** Jeanette Bead [mailto:JBead@lskslaw.com]
**Sent:** Wednesday, September 09, 2009 10:44 AM
**To:** Jill E. Clark
**Cc:** 'Borger, John P.'; Michael Sullivan; Chad Bowman; 'Walker, Leita'
**Subject:** Stepnes v. Ritschel, et al.

Jill,

I write to follow up on a few matters that were raised during yesterday's "meet and confer."

First, you have asked CBS to reconsider its position concerning the applicability of the privilege to the scripts provided to Nick Poser during the prepublication review of the July 15, 2008 broadcast. We continue to believe that communications between an attorney and client in connection with prepublication review are privileged and that the privilege extends to documents and scripts provided to counsel during the review. *See, e.g., Anaya v. CBS Broadcasting Inc.*, 251 F.R.D. 645, 653 (D.N.M. 2007) (declining to compel production of email exchange between attorney and client, including portion of script forwarded to counsel, because communication was made "for the purpose of obtaining and facilitating the provision of legal advice"). Given the foregoing, we will not disclose whether documents other than scripts were provided to Mr. Poser during the prepublication review.

Attached for your information are two emails forwarding the same script that we now believe should be produced to plaintiffs. A revised privilege log is also attached.

To the extent that you intend to move to compel CBS to produce documents relating to the prepublication review, please note that the email exchanges at issue are identified on the privilege log as Document Nos. 20 and 23.

Second, we have reviewed the CBS Defendants' requests for financial information from Mr. Stepnes (Document Request Nos. 41 and 42) in light of your stated objections to them. We think the requests are limited in scope and do not ask for every piece of paper relating to Stepnes's businesses and ventures. Rather, as we discussed, through these requests the CBS Defendants seek a snapshot of Mr. Stepnes' income, assets and liabilities, both for purposes of assessing his alleged damages and to evaluate the substantial truth of an aspect of the broadcast -- *i.e.*, his ability to redeem the foreclosed Irving House. To assist you in assessing what documents fall within the ambit of Document Request No. 42, "financial condition" documents would include, by way of example, documentation showing any ownership interest in real property; any stock, equity, or other interest in a business or corporation; annual reports or statements of any entities in which Mr. Stepnes owns an interest; end-of-year bank statements, investor statements, or any other such summaries or statements of his financial condition during the relevant time period. With regard to the tax returns, I have reviewed the case you cited during the call, *Maddow v. Procter & Gamble, Inc.*, 107 F.3d 846

(11th Cir. 1997). In *Maddow*, the Eleventh Circuit *affirmed* the compelled disclosure of the plaintiffs' tax returns. The language you pointed to relates only to whether the plaintiffs should have been sanctioned for refusing to disclose the returns where they already had disclosed their W-2s. We do not think *Maddow* advances your position.

I think this covers the matters I was supposed to get back to you about, but if I missed something, please let me know and I will try to respond as quickly as I can. Also, while I was drafting this, I received your email regarding Mr. Stepnes's proposed resolution regarding reputational evidence and want to be sure that I understand what Mr. Stepnes is proposing. The requests at issue are: Interrogatory No. 12 and Document Request Nos. 30, 31 and 38. Please confirm that Mr. Stepnes will agree to respond to these requests in full.

Finally, during yesterday's call, I neglected to follow up with you about Document Request No. 8 (relating to documents concerning the benefactor). We do not agree with Mr. Stepnes's proposed limitation, because, among other things, Mr. Taylor is a plaintiff in this case. Please let us know if Mr. Stepnes intends to stand on his objection.

Thank you.

Jeanette

Jeanette Melendez Bead
Levine Sullivan Koch & Schulz, L.L.P.
1050 Seventeenth Street, N.W.
Suite 800
Washington, D.C. 20036
202-508-1134 (direct dial)
202-861-9888 (facsimile)
www.lskslaw.com

9/10/2009

# EXHIBIT 18

**Jeanette Bead**

| | |
|---|---|
| **From:** | Jill E. Clark [jill@jillclarkpa.com] |
| **Sent:** | Wednesday, September 09, 2009 8:44 PM |
| **To:** | Jeanette Bead |
| **Subject:** | RE: Stepnes v. Ritschel, et al. |

I really have a hard time with it, when we have a meet and confer, and agree to something, and then the other attorney backs away and says it did not happen. That is what I believe happened here. You agreed to limit the "financial" documents by way of providing a definitive list. This was your idea to address my concern of overbreadth and undue burden.

As to the specific interrogatories/document requests below, we are fine responding to those, although you should not take this willingness as evidence that documents exist in response to all of those requests.

There are many things happening at the same time here. I have no court order now (or judicial inclination to grant one) that says discovery is suspended. I was forthcoming that Plaintiffs have decided to ask for this. If that means that your clients are still going to make a motion, despite our agreement to produce, then so be it.

But I think you have analyzed it wrong. If the Court says go ahead with discovery, we'll produce. If the Court stays all discovery pending an outcome of Plaintiffs' motions – then your clients would not be able to use the information, anyway.

I like your idea for 15 days. How about 20 days – that gets us past the hearing. In other words, if the Judge says go ahead with discovery, we'll produce 6 days from hearing. If discovery is stayed, we won't. Deal?

I need to speak to my client re the "financial condition" issue.

I appreciate your willingness to engage in ongoing discussion.


Jill Clark
Jill Clark, P.A.
(O) 763 417-9102
From home computer


**From:** Jeanette Bead [mailto:JBead@lskslaw.com]
**Sent:** Wednesday, September 09, 2009 3:49 PM
**To:** Jill E. Clark
**Subject:** RE: Stepnes v. Ritschel, et al.

Jill,

I do not recall making any deal with you yesterday. Rather, I said that I might be able to limit the request in some way and asked whether you would consider a request for some subset of the documents. After reviewing our requests, however, and as I stated multiple times during the call, I continue to believe that the requests do not seek every "scrap of paper" relating to Mr. Stepnes's financial condition. This morning, I was attempting to respond to your stated inability to understand what was meant by the term "financial condition" by identifying the kinds of documents that are sought by the requests.

In any event, now that I have had time to digest your email stating, among other things, that plaintiffs will be seeking a suspension of discovery in this case, I am more confused than ever about what you are trying to accomplish here. On the one hand, you state that Mr. Stepnes will agree to provide certain discovery within ten days, and, on the other hand, state that plaintiffs will be seeking to suspend discovery altogether. I am hard pressed to understand how the parties can resolve specific discovery disputes if the plaintiffs take the position that discovery should be suspended in its entirety, as any agreement reached under these circumstances would be illusory. We intend to move forward with our motion to compel.

9/10/2009

In the unlikely event that I am misunderstanding this unfortunate turn of events, for your convenience, I am pasting the discovery requests relating to reputational evidence for which we are seeking a resolution:

**Interrogatory No. 12:** Identify all legal actions to which you have been a party, whether criminal or civil in nature, including lawsuits, arbitrations and administrative proceedings. For each such action, identify the caption or name of the proceeding, the court, arbitrator(s) or administrative agency involved, the identity of all parties to each such suit or proceeding and the names of their counsel, the general nature of the suit or proceeding, including both claims or charges and counterclaims, if any, and the outcome of each, including any sanctions, fees, or costs imposed upon or awarded against you or your attorney.

**Document Request No. 30:** Documents, such as a complaint, sufficient to show the nature of any and all civil suits or actions that have been filed against you, or that you have filed against someone else, regardless of the outcome of any such suit or action.

**Document Request No. 31:** Documents, such as criminal indictments or informations, sufficient to show the nature of any and all criminal actions that have been filed against you, or criminal charges that have been asserted against you, regardless of the outcome of any such suit, action, or charge.

**Document Request No. 38:** Any and all transcripts of deposition testimony or trial testimony given by you in any civil or criminal proceeding, and any and all affidavits, declarations and any other form of statement given by you under oath.

If Mr. Stepnes agrees to supplement his interrogatory responses and serve all documents responsive to the foregoing requests within fifteen days from today's date, we will not move forward on this aspect of our motion.

Thank you.

Jeanette Melendez Bead
Levine Sullivan Koch & Schulz, L.L.P.
1050 Seventeenth Street, N.W.
Suite 800
Washington, D.C. 20036
202-508-1134 (direct dial)
202-861-9888 (facsimile)
www.lskslaw.com

---

**From:** Jill E. Clark [mailto:jill@jillclarkpa.com]
**Sent:** Wednesday, September 09, 2009 12:14 PM
**To:** Jeanette Bead
**Subject:** RE: Stepnes v. Ritschel, et al.

I am about to leave for a full day of depositions (on into the evening).

1. You were going to get to me a limited number of documents on the "financial condition" issue. Your stating "include" was not the deal you made with me yesterday. If you do not have discretion to make deals with me in these sessions, then I want to talk to the decision makers.
2. I do not have time to review the interrogatory/doc request numbers as I am out the door.
3. I do not agree to your raising another issue now – too late for the meet and confer. That will have to wait for another motion. You are depriving my clients of the opportunity to address these issues in a meet and confer, with your lack of planning. I have been very patient, but there is a limit. I also have motion to file tomorrow, and with due respect, I simply do not have the opportunity to consider additional issues just being raised now (particularly since I am out of the office – scheduled until after 10 pm).

**Jill Clark, Esq.**
**Jill Clark, P.A.**
Telephone: **763/417-9102**

9/10/2009

Fax: **763/417-9112**

jill@jillclarkpa.com

*This email may contain confidential or privileged communications. If you are not the proper recipient of this email, please destroy it and let us know that you have done so. If you are a client and want to discuss the risks associated with emails, or if you do not wish to have us communicate via email, please let us know.*

---

**From:** Jeanette Bead [mailto:JBead@lskslaw.com]
**Sent:** Wednesday, September 09, 2009 10:44 AM
**To:** Jill E. Clark
**Cc:** 'Borger, John P.'; Michael Sullivan; Chad Bowman; 'Walker, Leita'
**Subject:** Stepnes v. Ritschel, et al.

Jill,

I write to follow up on a few matters that were raised during yesterday's "meet and confer."

First, you have asked CBS to reconsider its position concerning the applicability of the privilege to the scripts provided to Nick Poser during the prepublication review of the July 15, 2008 broadcast. We continue to believe that communications between an attorney and client in connection with prepublication review are privileged and that the privilege extends to documents and scripts provided to counsel during the review. *See, e.g., Anaya v. CBS Broadcasting Inc.*, 251 F.R.D. 645, 653 (D.N.M. 2007) (declining to compel production of email exchange between attorney and client, including portion of script forwarded to counsel, because communication was made "for the purpose of obtaining and facilitating the provision of legal advice"). Given the foregoing, we will not disclose whether documents other than scripts were provided to Mr. Poser during the prepublication review.

Attached for your information are two emails forwarding the same script that we now believe should be produced to plaintiffs. A revised privilege log is also attached.

To the extent that you intend to move to compel CBS to produce documents relating to the prepublication review, please note that the email exchanges at issue are identified on the privilege log as Document Nos. 20 and 23.

Second, we have reviewed the CBS Defendants' requests for financial information from Mr. Stepnes (Document Request Nos. 41 and 42) in light of your stated objections to them. We think the requests are limited in scope and do not ask for every piece of paper relating to Stepnes's businesses and ventures. Rather, as we discussed, through these requests the CBS Defendants seek a snapshot of Mr. Stepnes' income, assets and liabilities, both for purposes of assessing his alleged damages and to evaluate the substantial truth of an aspect of the broadcast -- *i.e.*, his ability to redeem the foreclosed Irving House. To assist you in assessing what documents fall within the ambit of Document Request No. 42, "financial condition" documents would include, by way of example, documentation showing any ownership interest in real property; any stock, equity, or other interest in a business or corporation; annual reports or statements of any entities in which Mr. Stepnes owns an interest; end-of-year bank statements, investor statements, or any other such summaries or statements of his financial condition during the relevant time period. With regard to the tax returns, I have reviewed the case you cited during the call, *Maddow v. Proctor & Gamble, Inc.*, 107 F.3d 846 (11th Cir. 1997). In *Maddow*, the Eleventh Circuit *affirmed* the compelled disclosure of the plaintiffs' tax returns. The language you pointed to relates only to whether the plaintiffs should have been sanctioned for refusing to disclose the returns where they already had disclosed their W-2s. We do not think *Maddow* advances your position.

I think this covers the matters I was supposed to get back to you about, but if I missed something, please let me know and I will try to respond as quickly as I can. Also, while I was drafting this, I received your email regarding Mr. Stepnes's proposed resolution regarding reputational evidence and want to be sure that I understand what Mr. Stepnes is proposing. The requests at issue are: Interrogatory No. 12 and Document Request Nos. 30, 31 and 38. Please confirm that Mr. Stepnes will agree to respond to these requests in full.

Finally, during yesterday's call, I neglected to follow up with you about Document Request No. 8 (relating to documents concerning the benefactor). We do not agree with Mr. Stepnes's proposed limitation, because, among other things, Mr. Taylor is a plaintiff in this case. Please let us know if Mr. Stepnes intends to stand on his objection.

Thank you.

Jeanette

Jeanette Melendez Bead
Levine Sullivan Koch & Schulz, L.L.P.
1050 Seventeenth Street, N.W.
Suite 800
Washington, D.C. 20036
202-508-1134 (direct dial)

9/10/2009

202-861-9888 (facsimile)
www.lskslaw.com

9/10/2009

# EXHIBIT 19

**Jeanette Bead**

| | |
|---|---|
| **From:** | Jeanette Bead |
| **Sent:** | Thursday, September 10, 2009 2:03 PM |
| **To:** | 'Jill E. Clark' |
| **Subject:** | RE: Stepnes v. Ritschel, et al. |

Jill,

We do not have a deal. The CBS Defendants have been trying to obtain complete discovery responses from Mr. Stepnes for months, and just yesterday you advised that plaintiffs will be seeking to stay all discovery in this case as a sanction for alleged transgressions that have nothing whatsoever to do with the discovery requests in issue. Mr. Stepnes is offering to produce the documents, but only if plaintiffs' request to stay all discovery in this case is denied. At this point, it appears that only a court order compelling the disclosure of the requested documents will get us the relief we need. In addition, there is no guarantee that the Court will resolve plaintiffs' request for a stay at the September 24 hearing, so I am not inclined to tie any agreement to the resolution of that request.

Also, I just heard your voicemail regarding the documents relating to Mr. Stepnes's financial condition, which doesn't change my analysis above. If my clients are going to have any realistic chance of getting these matters resolved before Mr. Stepnes's deposition, we must proceed without further delay.

I certainly appreciate your willingness to engage in an ongoing discussion about these matters, but my clients must preserve their rights. Of course, if the parties are able to resolve some or all of these matters before the hearing on September 24, I will gladly advise the Court of that fact and withdraw the motion, either in part or in its entirety. Thank you.

Jeanette

Jeanette Melendez Bead
Levine Sullivan Koch & Schulz, L.L.P.
1050 Seventeenth Street, N.W.
Suite 800
Washington, D.C. 20036
202-508-1134 (direct dial)
202-861-9888 (facsimile)
www.lskslaw.com

---

**From:** Jill E. Clark [mailto:jill@jillclarkpa.com]
**Sent:** Wednesday, September 09, 2009 8:44 PM
**To:** Jeanette Bead
**Subject:** RE: Stepnes v. Ritschel, et al.

I really have a hard time with it, when we have a meet and confer, and agree to something, and then the other attorney backs away and says it did not happen. That is what I believe happened here. You agreed to limit the "financial" documents by way of providing a definitive list. This was your idea to address my concern of overbreadth and undue burden.

As to the specific interrogatories/document requests below, we are fine responding to those, although you should not take this willingness as evidence that documents exist in response to all of those requests.

There are many things happening at the same time here. I have no court order now (or judicial inclination to grant one) that says discovery is suspended. I was forthcoming that Plaintiffs have decided to ask for this. If that means that your clients are still going to make a motion, despite our agreement to produce, then so be it.

But I think you have analyzed it wrong. If the Court says go ahead with discovery, we'll produce. If the Court stays all discovery pending an outcome of Plaintiffs' motions – then your clients would not be able to use the information, anyway.

I like your idea for 15 days. How about 20 days – that gets us past the hearing. In other words, if the Judge says go ahead with discovery, we'll produce 6 days from hearing. If discovery is stayed, we won't. Deal?

I need to speak to my client re the "financial condition" issue.

I appreciate your willingness to engage in ongoing discussion.


Jill Clark
Jill Clark, P.A.
(O) 763 417-9102
From home computer

---

**From:** Jeanette Bead [mailto:JBead@lskslaw.com]
**Sent:** Wednesday, September 09, 2009 3:49 PM
**To:** Jill E. Clark
**Subject:** RE: Stepnes v. Ritschel, et al.

Jill,

I do not recall making any deal with you yesterday. Rather, I said that I might be able to limit the request in some way and asked whether you would consider a request for some subset of the documents. After reviewing our requests, however, and as I stated multiple times during the call, I continue to believe that the requests do not seek every "scrap of paper" relating to Mr. Stepnes's financial condition. This morning, I was attempting to respond to your stated inability to understand what was meant by the term "financial condition" by identifying the kinds of documents that are sought by the requests.

In any event, now that I have had time to digest your email stating, among other things, that plaintiffs will be seeking a suspension of discovery in this case, I am more confused than ever about what you are trying to accomplish here. On the one hand, you state that Mr. Stepnes will agree to provide certain discovery within ten days, and, on the other hand, state that plaintiffs will be seeking to suspend discovery altogether. I am hard pressed to understand how the parties can resolve specific discovery disputes if the plaintiffs take the position that discovery should be suspended in its entirety, as any agreement reached under these circumstances would be illusory. We intend to move forward with our motion to compel.

In the unlikely event that I am misunderstanding this unfortunate turn of events, for your convenience, I am pasting the discovery requests relating to reputational evidence for which we are seeking a resolution:

**Interrogatory No. 12:** Identify all legal actions to which you have been a party, whether criminal or civil in nature, including lawsuits, arbitrations and administrative proceedings. For each such action, identify the caption or name of the proceeding, the court, arbitrator(s) or administrative agency involved, the identity of all parties to each such suit or proceeding and the names of their counsel, the general nature of the suit or proceeding, including both claims or charges and counterclaims, if any, and the outcome of each, including any sanctions, fees, or costs imposed upon or awarded against you or your attorney.

**Document Request No. 30:** Documents, such as a complaint, sufficient to show the nature of any and all civil suits or actions that have been filed against you, or that you have filed against someone else, regardless of the outcome of any such suit or action.

**Document Request No. 31:** Documents, such as criminal indictments or informations, sufficient to show the nature of any and all criminal actions that have been filed against you, or criminal charges that have been asserted against you, regardless of the outcome of any such suit, action, or charge.

**Document Request No. 38:** Any and all transcripts of deposition testimony or trial testimony given by you in any civil or criminal proceeding, and any and all affidavits, declarations and any other form of statement given by you under oath.

If Mr. Stepnes agrees to supplement his interrogatory responses and serve all documents responsive to the foregoing requests within fifteen days from today's date, we will not move forward on this aspect of our motion.

Thank you.

Jeanette Melendez Bead
Levine Sullivan Koch & Schulz, L.L.P.

9/10/2009

1050 Seventeenth Street, N.W.
Suite 800
Washington, D.C. 20036
202-508-1134 (direct dial)
202-861-9888 (facsimile)
www.lskslaw.com

---

**From:** Jill E. Clark [mailto:jill@jillclarkpa.com]
**Sent:** Wednesday, September 09, 2009 12:14 PM
**To:** Jeanette Bead
**Subject:** RE: Stepnes v. Ritschel, et al.

I am about to leave for a full day of depositions (on into the evening).

1. You were going to get to me a limited number of documents on the "financial condition" issue. Your stating "include" was not the deal you made with me yesterday. If you do not have discretion to make deals with me in these sessions, then I want to talk to the decision makers.
2. I do not have time to review the interrogatory/doc request numbers as I am out the door.
3. I do not agree to your raising another issue now – too late for the meet and confer. That will have to wait for another motion. You are depriving my clients of the opportunity to address these issues in a meet and confer, with your lack of planning. I have been very patient, but there is a limit. I also have motion to file tomorrow, and with due respect, I simply do not have the opportunity to consider additional issues just being raised now (particularly since I am out of the office – scheduled until after 10 pm).

**Jill Clark, Esq.**
Jill Clark, P.A.
Telephone: **763/417-9102**
Fax: **763/417-9112**
jill@jillclarkpa.com
*This email may contain confidential or privileged communications. If you are not the proper recipient of this email, please destroy it and let us know that you have done so. If you are a client and want to discuss the risks associated with emails, or if you do not wish to have us communicate via email, please let us know.*

---

**From:** Jeanette Bead [mailto:JBead@lskslaw.com]
**Sent:** Wednesday, September 09, 2009 10:44 AM
**To:** Jill E. Clark
**Cc:** 'Borger, John P.'; Michael Sullivan; Chad Bowman; 'Walker, Leita'
**Subject:** Stepnes v. Ritschel, et al.

Jill,

I write to follow up on a few matters that were raised during yesterday's "meet and confer."

First, you have asked CBS to reconsider its position concerning the applicability of the privilege to the scripts provided to Nick Poser during the prepublication review of the July 15, 2008 broadcast. We continue to believe that communications between an attorney and client in connection with prepublication review are privileged and that the privilege extends to documents and scripts provided to counsel during the review. *See, e.g., Anaya v. CBS Broadcasting Inc.*, 251 F.R.D. 645, 653 (D.N.M. 2007) (declining to compel production of email exchange between attorney and client, including portion of script forwarded to counsel, because communication was made "for the purpose of obtaining and facilitating the provision of legal advice"). Given the foregoing, we will not disclose whether documents other than scripts were provided to Mr. Poser during the prepublication review.

Attached for your information are two emails forwarding the same script that we now believe should be produced to plaintiffs. A

revised privilege log is also attached.

To the extent that you intend to move to compel CBS to produce documents relating to the prepublication review, please note that the email exchanges at issue are identified on the privilege log as Document Nos. 20 and 23.

Second, we have reviewed the CBS Defendants' requests for financial information from Mr. Stepnes (Document Request Nos. 41 and 42) in light of your stated objections to them. We think the requests are limited in scope and do not ask for every piece of paper relating to Stepnes's businesses and ventures. Rather, as we discussed, through these requests the CBS Defendants seek a snapshot of Mr. Stepnes' income, assets and liabilities, both for purposes of assessing his alleged damages and to evaluate the substantial truth of an aspect of the broadcast -- *i.e.*, his ability to redeem the foreclosed Irving House. To assist you in assessing what documents fall within the ambit of Document Request No. 42, "financial condition" documents would include, by way of example, documentation showing any ownership interest in real property; any stock, equity, or other interest in a business or corporation; annual reports or statements of any entities in which Mr. Stepnes owns an interest; end-of-year bank statements, investor statements, or any other such summaries or statements of his financial condition during the relevant time period. With regard to the tax returns, I have reviewed the case you cited during the call, *Maddow v. Proctor & Gamble, Inc.*, 107 F.3d 846 (11th Cir. 1997). In *Maddow*, the Eleventh Circuit *affirmed* the compelled disclosure of the plaintiffs' tax returns. The language you pointed to relates only to whether the plaintiffs should have been sanctioned for refusing to disclose the returns where they already had disclosed their W-2s. We do not think *Maddow* advances your position.

I think this covers the matters I was supposed to get back to you about, but if I missed something, please let me know and I will try to respond as quickly as I can. Also, while I was drafting this, I received your email regarding Mr. Stepnes's proposed resolution regarding reputational evidence and want to be sure that I understand what Mr. Stepnes is proposing. The requests at issue are: Interrogatory No. 12 and Document Request Nos. 30, 31 and 38. Please confirm that Mr. Stepnes will agree to respond to these requests in full.

Finally, during yesterday's call, I neglected to follow up with you about Document Request No. 8 (relating to documents concerning the benefactor). We do not agree with Mr. Stepnes's proposed limitation, because, among other things, Mr. Taylor is a plaintiff in this case. Please let us know if Mr. Stepnes intends to stand on his objection.

Thank you.

Jeanette

Jeanette Melendez Bead
Levine Sullivan Koch & Schulz, L.L.P.
1050 Seventeenth Street, N.W.
Suite 800
Washington, D.C. 20036
202-508-1134 (direct dial)
202-861-9888 (facsimile)
www.lskslaw.com

9/10/2009